WAYNE COUNTY RURAL TAXPAYERS ASSOCIATION
*v.* WAYNE COUNTY DRAIN COMMISSIONER.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE.
    Claims not made in the trial court below may not be considered on appeal.

2. STIPULATIONS—QUESTIONS REVIEWABLE.
    A stipulation of facts in a case limits consideration of questions by both the trial court and the Supreme Court to claims supported by the stipulation.

3. DRAINS—MAINTENANCE AND REPAIR COSTS—ASSESSMENTS.
    A drain commissioner's authority to recover for maintenance and repair costs of old drains by way of assessment against property owners within the respective drainage districts must be found in statutes as they existed at the time the maintenance and repair costs were incurred (CL 1948, § 267.6, as amended).

4. SAME—CLEANING OUT—MAINTENANCE AND REPAIRS.
    The term *cleaning out,* when used with respect to drains, is only a removal of sediment or other material that may have become deposited in it or removal of obstructions therein, and is too limited to embrace maintenance and repairs which include replacement of structural parts (CL 1948, § 267.1, as amended by PA 1949, No 247, and PA 1951, No 265).

5. SAME—MAINTENANCE AND REPAIRS—ASSESSMENTS—STATUTES.
    Assessments for maintenance and repairs to old drains against property owners in drainage districts during the years 1949 to 1955 *held,* invalid, since there was no authority during such period for the recovery of such costs on old drains by assessment, such costs being authorized to be paid from revolving

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  5 Am Jur 2d, Appeal and Error §§ 723–725.
[2]  5 Am Jur 2d, Appeal and Error §§ 711, 712.
[3]  17A Am Jur, Drains and Sewers §§ 60–84.
[4]  17A Am Jur, Drains and Sewers § 53.
[5, 6]  17A Am Jur, Drains and Sewers §§ 63, 65.
[7]  14 Am Jur, Costs § 91.

drain funds appropriated annually by boards of supervisors and collected by general countywide taxation (CL 1948, § 267.1, as amended by PA 1949, No 247, and PA 1951, No 265; § 267.6, as amended by PA 1953, No 123, and PA 1954, No 146; § 271.1).

6. SAME—MAINTENANCE AND REPAIR—BASIS OF ASSESSMENT.

Taxpayers' claim that drain commissioner had assessed the costs of maintenance and repair of old drains on a basis that was different than that used for the original construction of the drain *held,* not supported by stipulated record in action to recover payments made under protest, hence plaintiffs were not denied due process because of alleged change in method of assessment of costs (CL 1948, § 267.6, as last amended by PA 1955, No 44; CLS 1956, § 280.196).

7. COSTS—PUBLIC QUESTIONS—DRAIN ASSESSMENTS FOR MAINTENANCE AND REPAIR.

No costs are allowed in action to recover assessments for maintenance and repair of old drains, where public questions were involved.

Appeal from Wayne; Weideman (Carl M.), J. Submitted January 11, 1963. (Calendar No. 36, Docket No. 49,682.) Decided March 7, 1963.

Action by Wayne County Rural Taxpayers Association, a Michigan nonprofit corporation, against Henry V. Herrick, Wayne County Drain Commissioner, and Harold E. Stoll, Wayne County Treasurer, to recover payments, made under protest, of special assessments in 1959 for drain maintenance and repair in prior years. Judgment for defendants. Plaintiff appeals. Reversed and remanded for entry of judgment for assessments for years 1949 to 1955.

*Edwin C. Ide,* for plaintiff.

*Samuel H. Olsen,* Prosecuting Attorney, *Aloysius J. Suchy, David E. Flayer, David R. Kaplan,* and *William F. Bledsoe,* Assistant Prosecuting Attorneys, for defendants.

Souris, J. This case is 1 of several consolidated for trial in the Wayne circuit court. The issues being identical, by stipulation of counsel for all parties in all cases this case was selected for decision controlling disposition of all cases.

Plaintiff is a nonprofit association to which a number of taxpayers assigned their rights to recover payments made under protest upon special assessments spread in 1959 against the taxpayers' properties for the cost of work described in this record only as maintenance and repair of existing drains during the period from 1949 to 1959. This suit and the companion suits were instituted for recovery of such payments made under protest.

The trial judge's decision in favor of defendants was based upon a stipulation of facts from which it appears that for many years past the cost of maintenance and repair (we find nothing in this record to indicate the nature of the work included in this expression) of existing drains had been paid from the county's revolving drain fund. CL 1948, § 271.1 et seq. (Stat Ann 1952 Rev § 11.105 et seq.).[1] The amounts expended annually for each drain sometimes were quite insignificant. For example, in 1953, a total of $10.27 was spent in 1 of the drain districts involved in this case. However, the sum total of all such amounts expended during the 10-year period for all drains involved in this litigation is substantial. In 1959 the total sum of $226,000 was sought to be recovered by special assessments against property owners in 151 drain districts for expenditures made during the 10-year period. It was stipulated that similar amounts were assessed in the years 1957 and 1958. It was also stipulated that no notices of the assessments were given to the taxpayers by the defendant drain commissioner.

---

[1] Currently CLS 1956, § 280.301 et seq. (Stat Ann 1960 Rev § 11.1301 et seq.).

It was defendants' claim that the defendant drain commissioner's predecessors in office had failed to assess the cost of periodic maintenance and repair of existing drains to the property owners within each drain district when the funds belonging to said drains were not sufficient for such purpose and that the drain commissioner was authorized by section 196 of the drain code of 1956, CLS 1956, § 280.196, as amended by PA 1959, No 70 (Stat Ann 1960 Rev § 11.1196), to recover such costs previously incurred by special assessments against the property in each of such drain districts.

The plaintiff makes a number of claims, some of which were not made in the trial court below and, therefore, cannot be considered on appeal. Other claims made by the plaintiff are not supported by the stipulation of facts upon which the case was submitted to the trial judge and by which we are restricted, as was he.

The plaintiff makes 2 principal claims which this Court properly may consider. First, relying upon *Harrison* v. *Metz*, 17 Mich 377, plaintiff says the drain code of 1956 has a prospective operation only and that if authority to assess for costs incurred prior thereto is to be found, it must be found in the general drain law (PA 1923, No 316, as amended) which was in effect until superseded by the drain code of 1956. Plaintiff concedes that the general drain code of 1956 authorized assessment for such costs subsequently incurred and further concedes that PA 1955, No 44, amended the now superseded general drain law to so provide during the year of 1955. However, plaintiff contends that prior to its 1955 amendment there was no specific authorization in the general drain law for the recovery of such costs by special assessment and, therefore, that the assessments for the recovery of costs incurred from 1949 through 1954 are illegal for that reason. We

agree with plaintiff that the drain commissioner's authority to recover the 1949-1954 maintenance and repair costs must be found in statutory law then in force.

Prior to its amendment by PA 1955, No 44, the general drain law required the drain commissioner to make annual, or more frequent, inspections of existing drains.  He was authorized, within certain monetary limits to perform certain specified work on such drains where necessary to keep them in working order or where an emergency condition existed endangering public health, crops or property.  The work authorized to be done upon such drains was limited to cleaning out, relocating, widening, deepening, straightening, tiling, extending, or relocating along a highway.[2]  The specific statutory language applicable to the situation before us, as it read until its amendment in 1953, is set forth in the margin.[3]

---

[2] See section 1 of chapter 7 of the old general drain law, CL 1948, § 267.1, and as amended by PA 1949, No 247, and PA 1951, No 265 (Stat Ann 1952 Rev § 11.67).

[3] Section 6 of chapter 7, CL 1948, § 267.6 (Stat Ann 1952 Rev § 11.72), read as follows, prior to its amendment by PA 1953, No 123, PA 1954, No 146, and PA 1955, No 44:

"Sec. 6.  The county drain commissioner of any county, or the drainage board in case of intercounty drains, shall cause an inspection to be made annually, or oftener if deemed necessary, by a competent person, of all drains laid out and constructed under this act.  The commissioner or the drainage board may without petition, expend an amount not to exceed, in any 1 year, 40% of the original cost of said drain for any work contemplated in this chapter [as specified in section 1 of chapter 7], where in the opinion of said commissioner or drainage board, as the case may be, such inspection shows such work to be necessary to keep the drain in working order or where an emergency condition exists endangering the public health, crops or property:  Provided, That the county drain commissioner of any county, or the drainage board in case of intercounty drains, if the initial cost of the drain exceeded $1,500, shall not expend to exceed $600 for the purpose of cleaning out drains unless it shall be approved by the township board or boards of the townships traversed by the drain.  In case the fund belonging to said drain is not sufficient to pay for said expense, the commissioner or board shall reassess said drain therefor according to benefits received and all freeholders shall be notified of assessment either by publication or by first class mail when the total assessment exceeds $600:  Provided further, That in computing the amount which may be spent in accord-

Neither party has cited any prior decisions of this Court in which the precise question here involved has been considered, nor have we found any. If authorization for assessing the cost of maintenance and repair is to be found in the general drain law prior to its 1955 amendment, it must arise from the drain commissioner's statutory authorization to assess for "cleaning out" existing drains. In 1874 Mr. Justice COOLEY described the process of "cleaning out" a drain as "only a removal of sediment or other material that may have become deposited in it" (*Harbaugh* v. *Martin,* 30 Mich 234) and in 1886, to Mr. Justice CAMPBELL it connoted nothing more than cleansing (*Barker* v. *Township of Vernon,* 63 Mich 516). The meaning attributed by Justices COOLEY and CAMPBELL to the words "cleaning out," as used in this statute, is too limited to include more than the removal of obstructions from drains. Absent a record-detailed description of the work involved in maintenance and repair of these drains, we must assume that it involved replacement of structural parts as well as their repair and perhaps other work as well and, hence, beyond the meaning of the words "cleaning out." If the work done involved only the cleaning out of drains, as above defined, we have no doubt the trial court and this Court would have been so advised. Furthermore, if such were the situation, there being express statutory authority to assess for the costs of cleaning out drains, the assessments undoubtedly would have been expressly stated to be for such purpose. We conclude, therefore, that the assessments involved

---

ance with the provisions of this section, the cost of any work performed by any State or Federal agency which is not chargeable to such county or drainage district shall not be included: Provided further, For any work to be done on any county drain or intercounty drain by any State or Federal agency, it will not be necessary for the drain commissioner or drainage board to advertise for bids for that portion of the work done by such agency."

in this litigation for recovery of maintenance and repair costs incurred from 1949 to 1955 are invalid because no statutory authority existed during that period for recovery of such costs by such assessment.

Apparently before 1955 property owners in established drain districts were subject to special assessment only for the cost of the work specified in CL 1948, § 267.1, as amended (Stat Ann 1952 Rev § 11.67). By another statutory provision, the cost of repairing old drains was authorized to be paid from revolving drain funds appropriated annually by boards of supervisors and collected "by general taxation from the taxable property within their respective counties." CL 1948, § 271.1 (Stat Ann 1952 Rev § 11.105). Revolving drain funds could be used for the purpose of paying certain other expenses incurred in laying out a drain district or in constructing a drain, and such moneys advanced were to be recouped from assessments specifically authorized to be collected therefor. However, in the absence of any specific statutory authorization for the assessment of costs of repair, it appears that the legislature intended repair costs to be borne by the public through the county's general taxation for the revolving drain fund.

In 1955, however, as plaintiff concedes, the legislature specifically provided for assessment of the cost of maintenance and repair of existing drains against the property owners within a drain district.[4]

---

[4] Section 6 of chapter 7, as amended by PA 1955, No 44:
"Sec. 6. An annual inspection shall be made of all drains laid out and constructed under this act. In the case of county drains, such inspection shall be made by the drain commissioner, or a competent person appointed by him. In the case of intercounty drains, such inspection shall be caused to be made by the drainage board. Whenever such inspections disclose the necessity of expending money for the maintenance and repair of any drain in order to keep it in working order, the drain commissioner, in the case of a county drain, or the drainage board, in the case of an intercounty drain, may without petition expend an amount not to exceed in any 1 year $800 for maintenance and repair of any drain: Provided, That

From that date on the defendant commissioner was entitled to collect the cost of maintenance and repair of such drains by special assessment against those for whose special benefit the work had been done. Except for changes in the amount of expenditures requiring a petition, municipal approval, and notice of assessment, in 1959 when the challenged special assessments were made, the counterpart provisions of the drain code of 1956, § 196 (CLS 1956, § 280.196, as amended by PA 1959 No 70 [Stat Ann 1960 Rev § 11.1196]), were identical to section 6 of chapter 7 of the general drain law, as amended by PA 1955, No 44.

It is our conclusion from the foregoing that prior to 1955, the cost of maintenance and repair of existing drains was to be borne by the public at large by way of general taxation for county revolving drain funds and that, as to existing drains, only the cost of their cleaning out, relocating, widening, deepening, straightening, tiling, extending or re-

whenever it shall be found necessary by the drain commissioner or the drainage board, as the case may be, to expend funds in excess of $800 in any 1 year for maintenance and repair of any drain, such additional amounts shall not be expended until approved by not less than 50% of the total number of legislative bodies of all of the cities and townships within or partly within said drainage district. In case the fund belonging to said drain is not sufficient to pay for any work authorized by this section, the drain commissioner or the drainage board, as the case may be, shall reassess said drainage district therefor according to benefits received, and in case the total expenditure is more than $800, all freeholders subject to assessment shall be notified of such assessment by either publication or first class mail. Whenever an emergency condition exists which endangers the public health, crops or property within their respective districts, the drain commissioner or the drainage board, as the case may be, may expend funds for any work contemplated in this chapter subject to the limitations provided in this section for maintenance and repair.

"In computing the amounts which may be expended in accordance with the provisions of this section, the cost of any work to be performed by any State or Federal agency which is not chargeable to such county or intercounty drainage district shall not be included, nor shall it be necessary for the drain commissioner or the drainage board, as the case may be, to advertise for bids for that portion of the work to be done by such State or Federal agency." CL 1948, § 267.6, as amended by PA 1955, No 44 (Stat Ann 1955 Cum Supp § 11.72).

locating along a highway could be specially assessed against property owners in the affected drain districts. Beginning only in 1955, and continuing to date, the legislature authorized drain commissioners to collect also the cost of maintenance and repair of such existing drains by special assessment against the owners of property in the drain districts affected. Nothing in PA 1955, No 44, or in the drain code of 1956 purports to authorize drain commissioners to assess currently for the recovery of costs expended between 1949 and 1955 for maintenance and repair of existing drains. Consequently, we hold that defendants were without authority in 1959 to assess plaintiff's assignors and others similarly situated for such costs incurred by the county between 1949 and 1955.

In 1960 the drain code of 1956 was amended to prohibit assessment of the cost of maintenance and repair of an existing drain after 2 years from the completion of the inspection of the work. Section 196 of the drain code of 1956 (CLS 1956, § 280.196, as amended by PA 1960, No 96 [Stat Ann 1961 Cum Supp § 11.1196]). Section 196, as so amended, appears, with emphasis added, in the margin.[5] Special

---

[5] "Sec. 196. An annual inspection shall be made of all drains laid out and constructed under this act. In the case of county drains, such inspection shall be made by the drain commissioner, or a competent person appointed by him. In the case of intercounty drains, such inspection shall be caused to be made by the drainage board. Whenever such inspections disclose the necessity of expending money for the maintenance and repair of any drain in order to keep it in working order, the drain commissioner, in the case of a county drain, or the drainage board, in the case of an intercounty drain, may without petition expend an amount not to exceed in any 1 year $500 per mile or fraction thereof or 1% of the original cost of the drain and 1% of extensions thereof for maintenance and repair of any drain. Whenever it shall be found necessary by the drain commissioner or the drainage board to expend funds in excess of $500 per mile or fraction thereof or 1% of the original cost of the drain and 1% of extensions thereof in any 1 year for maintenance and repair of any drain, such additional amounts shall not be expended until approved by not less than 50% of the total number of legislative bodies of all of the cities and townships within or partly within the drainage district. In case the fund belonging to

assessments for such work cannot now, even arguably, be spread after expiration of such 2-year period.

Plaintiff's second principal claim—its due process claim—is based upon its contention that the defendant drain commissioner assessed the costs of maintenance and repair on a basis different from the assessment made at the time of original construction of the drains, thereby necessitating hearings on the issue of apportionment of costs "according to benefits received" as such apportionment is required to be made by section 196 of the drain code of 1956. Apparently plaintiff concedes, on the strength of *Oakland County Drain Commissioner* v. *City of Royal Oak,* 325 Mich 298 (11 ALR2d 1122), following the holding of the United States supreme court in *Breiholz* v. *Board of Supervisors of Pocahontas*

---

the drain is not sufficient to pay for any work authorized by this section, the drain commissioner or the drainage board shall reassess the drainage district therefor according to benefits received, *which reassessment shall be made and spread upon the city or township tax assessment roll within 2 years from the completion of the inspection work,* and in case the total expenditure is more than $500 per mile or fraction thereof or 1% of the original cost of the drain and 1% of extensions thereof, all freeholders subject to assessment shall be notified of such assessment by publication in a newspaper of general circulation within the drainage district and by first class mail to each person whose name and address appears upon the last city or township tax assessment roll as owning land within the drainage district. An affidavit of mailing shall be made by the drain commissioner or chairman of the drainage board which shall be conclusive proof that the notices required by this section were mailed. The failure to receive such notices by mail shall not constitute a jurisdictional defect invalidating a drain proceeding or tax, if notice by publication as required by this section were complied with. Whenever an emergency condition exists which endangers the public health, crops or property within their respective districts, the drain commissioner or the drainage board may expend funds for any work contemplated in this chapter subject to the limitations provided in this section for maintenance and repair.

"In computing the amounts which may be expended in accordance with the provisions of this section, the cost of any work to be performed by any State or Federal agency which is not chargeable to such county or intercounty drainage district shall not be included, nor shall it be necessary for the drain commissioner or the drainage board to advertise for bids for that portion of the work to be done by such State or Federal agency."

*County, Iowa,* 257 US 118 (42 S Ct 13, 66 L ed 159), that if the special assessments were apportioned in accordance with the apportionment of the original cost of constructing the drain, no hearing would be required.

The difficulty with plaintiff's claim is that the record does not support its assertion that the special assessments here attacked were apportioned on a basis different from the apportionment of the original cost of constructing the drains. Indeed, the trial judge expressly found, as appears in his opinion, that the assessments were apportioned "in accordance with the original apportionment of benefits." We cannot say from the stipulated record before us that the trial court erred in so finding. Applicable to the claim made by this plaintiff is the language which appears in our opinion in *Oakland County Drain Commissioner* v. *City of Royal Oak, supra,* at p 314:

"At the time of the original apportionment of benefits to the lands full opportunity for hearing and appeal from such apportionment is provided by the statute. (CL 1948, § 266.4 *et seq.* [Stat Ann § 11.59 *et seq.*].)[6] As the added assessments are based on the same percentages as the original apportionment, there is no new determination of benefits to the land, the parties have had full opportunity of hearing on such apportionment. Thus there is no denial of due process of law in not providing for new hearings."

The assessments applicable to the costs incurred for maintenance and repair during the period from 1955 to 1959 were, therefore, valid. However, as above noted, the defendants had no authority to include therein such costs incurred during the

---

[6] See, currently, chapter 7 of the drain code of 1956, CLS 1956, § 280.151 *et seq.*, as amended (Stat Ann 1960 Rev § 11.1151 *et seq.*, as amended).—REPORTER.

preceding period from 1949 to 1955. Accordingly, the trial judge's judgment of no cause must be reversed and this case must be remanded for entry of judgment in accord herewith. No costs, a public question being involved.

Carr, C. J., and Dethmers, Kelly, Black, Kavanagh, Otis M. Smith, and O'Hara, JJ., concurred.