OAKLAND COUNTY DRAIN COM'R v. CITY OF ROYAL OAK.

1. JUDGMENT—DISMISSAL OF BILL—PARTIES.

   Where decree dismissed bill as to certain private parties, named as defendants in county drain commissioner's suit for declaratory decree under order issued under plan of composition as to creditor bondholders of drain district, confirmed by the Federal court under the bankruptcy act, which defendants had paid their assessments in full, they stand in the same position as if they had not been originally named as defendants (11 USCA, §§ 401–404; CL 1948, § 261.1 *et seq.*).

2. ACTION—DECLARATION OF RIGHTS—ACTUAL CONTROVERSY—COUNTY DRAIN COMMISSIONER—ASSESSMENT—COMPOSITION FOR CREDITORS.

   Jurisdiction was properly entertained and decree entered by State circuit court in county drain commissioner's suit for declaratory decree under order issued under plan of composi-

---

REFERENCES FOR POINTS IN HEADNOTES

[2, 3, 14, 16] 16 Am Jur, Declaratory Judgments, §§ 9–11, 14, 24, 26, 36, 45, 46, 49.
[2, 3, 14, 16] Declaration of rights or declaratory judgments. 12 ALR 52; 19 ALR 1124; 50 ALR 42; 68 ALR 110; 87 ALR 1205; 114 ALR 1361.
[4] 14 Am Jur, Courts, § 121.
[5] 14 Am Jur, Courts, §§ 99, 110.
[6, 12, 13] 48 Am Jur, Special or Local Assessments, §§ 60, 80, 89.
[7–8, 10–13] 17 Am Jur, Drains and Sewers, §§ 63–69; 48 Am Jur, Special or Local Assessments, § 21 *et seq.*
[8] 48 Am Jur, Special or Local Assessments, § 27.
[9–12] 17 Am Jur, Drains and Sewers, §§ 3–9.
[10] 17 Am Jur, Drains and Sewers, § 74; 48 Am Jur, Special or Local Assessments, § 63 *et seq.*
[11–13] 17 Am Jur, Drains and Sewers, § 65; 48 Am Jur, Special or Local Assessments, § 150.
[11–13] Necessity that additional assessment in proceeding for local improvement precede incurring liability in excess of the original assessment. 63 ALR 1179.
[15] 43 Am Jur, Public Securities and Obligations, § 293.
[16] 14 Am Jur, Costs, §§ 22, 91.

tion as to creditor bondholders of drain district, confirmed by the Federal court under the bankruptcy act, where there was an actual controversy as to the levying of assessments under the order between plaintiff, bondholders, a municipality and its taxpayers and plaintiff proceeded at great personal risk if he pursued the line suggested by either the bondholders or the municipality and its taxpayers (CL 1948, § 691.501).

3. JUDGMENT—COLLATERAL ATTACK—DRAINS—ORIGINAL PROCEEDINGS—REFUNDING OPERATIONS—DECLARATORY DECREE.

The decree of a Federal court which had determined the validity of drain proceedings, the issuance of original bonds and the right and duty of the drain commissioner to levy original assessments and which reserved jurisdiction for the purpose of carrying the decree into effect and to grant any further relief necessary, was not the subject of a collateral attack in suit for declaratory decree in which none of such questions were raised, the original bonds had been refunded and county drain commissioner sought instruction as to how to proceed under order, issued pursuant to plan of composition confirmed by the Federal court under the bankruptcy act, relative to levying of additional assessments in case of a deficiency and to the retirement of refunding bonds (11 USCA, §§ 401–404).

4. COURTS—INTERPRETATION OF STATE LAWS—FEDERAL DECREES— PARTIES—COUNTY DRAIN COMMISSIONER.

Although taxpayers may be bound by decree of the Federal court in composition proceedings under the bankruptcy act, such decree would not be binding as to rights and duties of the county drain commissioner under State laws, the construction and interpretation of which by the State courts are binding on the Federal courts, hence, where it has been determined subsequent to decree of Federal courts that lands which had passed through the so-called "scavenger" sales were freed not only from all prior taxes and special assessments, but also freed of the possibility of further assessments for benefits to the land by public improvements made prior to acquisition of title by the State, such lands would not be subject to additional deficiency assessments for drains (11 USCA, §§ 401–404).

5. SAME—CONSTRUCTION OF STATE STATUTES.

Decrees of a State court construing such State's statutes are binding on the Federal court in an action on bonds issued pursuant to such State statute.

6. Drains—Additional Assessments—Declaration of Rights—
Exempted Scavenger-Act Lands—Payment by Political Units.
> Decree in suit for declaratory decree wherein county drain
> commissioner was directed to make additional assessments
> upon lands and political units within drain district, exempt-
> ing lands subject to nearly 39 per cent. of the assessment,
> title to which had become absolute in the State through tax
> sales, even though now in the hands of private individuals
> through operation of so-called scavenger act, but requiring
> that in levying such additional assessments against the re-
> maining land and the political units for payment of refund-
> ing bonds, such exempted lands were to be included for com-
> putation purposes only, and that political units assessed at
> large must pay all instalments of such assessments in
> full whether collected for their taxpayers or not *held*, proper,
> under pertinent statutory provisions relative to reassess-
> ments and refunding operations (PA 1932 [1st Ex Sess],
> No 13, as amended; PA 1937, No 155, as amended; CL 1948,
> § 270.18).

7. Municipal Corporations—Public Improvements—Special As-
sessments—Special Benefits.
> Special assessments for a public improvement, such as a drain,
> must be based on the special benefits to the land assessed there-
> for.

8. Same—Public Improvements—Special Assessments—Amount.
> The special benefits to lands assessed, for a public improvement,
> need not necessarily be measured solely by the enhanced value
> of the lands so assessed.

9. Drains—Purpose—Public Benefits.
> Drains are not only for the purpose of improving the land, but
> are also for improving the sanitation and health of the resi-
> dents and municipalities of the entire district.

10. Municipal Corporations—Public Improvement—Special As-
sessment—Measure of Benefit.
> The exact and actual monetary benefit to any individual parcel
> of land, subject to a special assessment for a public improve-
> ment can only be estimated with a fair degree of exactness.

11. Drains—Special Assessments—Additional Assessments—
Statutes—Review.
> Where original special assessments for drain were properly
> levied and no appeal taken therefrom, it was not capricious,
> arbitrary, fraudulent or a denial of due process to base

added assessments for deficiency on the prior determination of benefits to the land notwithstanding that statute, in providing for such additional assessments, requires apportionment to be made as in the first instance and prohibits review or appeal from the further assessment made in such manner (CL 1948, §§ 269.3, 270.18).

12. SAME—MUNICIPAL CORPORATIONS—ASSESSMENTS AT LARGE—
PAYMENT IN FULL.

Order that municipalities should pay in full the amount assessed at large for deficiency assessments for drain whether or not the municipalities had collected it all from their taxpayers *held,* correct, since benefits of a drain to a village or city are the improved health and sanitation of that municipality as well as benefits to the streets, and such assessments are a general obligation of the city or village (CL 1948, § 270.3).

13. SAME—DEFICIENCY—ADDITIONAL ASSESSMENTS—EXEMPTIONS—
SCAVENGER SALES.

In levying additional assessments for deficiency in drain fund for payment of refunding bonds issued after Federal court confirmation of plan of composition of creditors under the bankruptcy act, the drain commissioner in levying such additional assessments upon lands other than those whose title had become absolute in the State and been sold by it under the so-called scavenger act, and upon political units, should assess them no greater amounts than would be assessable against them if no such lands had been exempted would be subject to the full deficiency (PA 1937, No 155, as amended; CL 1948, § 270.18).

14. ACTION—DECLARATION OF RIGHTS—QUESTIONS DETERMINABLE—
COUNTIES—DRAINS—BONDS.

Where liability of county for ultimate payment of drain bonds on district within its limits was dependent upon factors not before court making declaration of rights on bill filed by county drain commissioner, determination of such liability was properly withheld, since it will not arise until the maturity date of the bonds.

15. DRAINS—REFUNDING BONDS—TEMPORARY SURPLUS—PAYMENT—
TENDER.

Where statute prescribed method of determining which refunding bonds should be paid in full or at a discount in case there were a temporary surplus in the drain fund above interest requirements, order requiring county drain commis-

sioner to follow such prescribed procedure was proper, notwithstanding that there might be an ultimate insufficiency in amount raised through the special assessments to retire all the bonds involved and that there may be a loss to some bondholders, since the bondholders all have an equal right to make tender of their bonds for payment in case moneys are available from time to time (PA 1932 [1st Ex Sess], No 13).

16. COSTS—PUBLIC   QUESTION—DRAINS—REFUNDING   BONDS—DEFICIENCY ASSESSMENT—DECLARATION OF RIGHTS.

No costs are allowed in suit for declaration of rights under order, made by county drain commissioner with respect to additional assessment for payment of refunding bonds for drain district under plan of composition confirmed by Federal court under bankruptcy act, a public question being involved (11 USCA, §§ 401–404; PA 1932 [1st Ex Sess], No 13; CL 1948, § 270.18).

Appeal from Oakland; Hartrick (George B.), J. Submitted April 7, 1949. (Docket No. 28, Calendar No. 44,318.) Decided June 29, 1949. Certiorari denied by the Supreme Court of the United States December 5, 1949.

Bill by Earl L. Clark, Oakland County Drain Commissioner, against City of Royal Oak and others for declaratory decree relative to disposition of money in Royal Oak Drain Sinking Fund and additional assessments. From decree rendered, Edgar B. Whitcomb and others, bondholders, appeal. City of Pleasant Ridge and others cross-appeal. Affirmed and remanded.

*Harry J. Merritt* (*Claude H. Stevens,* of counsel), for plaintiff.

*Joslyn, Joslyn & Joslyn* and *Voorhies, Long, Ryan & McNair,* for defendant bondholders.

*Arthur E. Moore,* for cross-appellants.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Ernest O. Zirkalos,*

Assistant Attorney General, for defendant State Land Office Board.

BUTZEL, J.   Earl L. Clark, county drain commissioner for the county of Oakland, Michigan, plaintiff, filed a petition for declaration of rights naming as defendants various cities and townships and individual landowners within the Royal Oak drain district in the county of Oakland, the county itself, the State highway commissioner, the State land office board, and holders of the drain district's bonds. There being a large number of landowner-taxpayers and bondholders interested, the individual defendants were designated as representing the class to which they belong as well as themselves.   In order to properly discuss the questions raised in this Court and the court below, a brief history of this drain is necessary.

In conformance with PA 1923, No 316, as amended,* the Royal Oak drain district was duly formed under the direction of the Oakland county drain commissioner, and a large underground drain planned and constructed at a cost of $4,066,000.   An assessment was levied against the lands in the drain district payable in 14 instalments.   The assessment was apportioned 40 per cent. against political units at large and 60 per cent. against individually held lands in the district.   Bonds in the principal sum of $3,-796,000 were issued to secure money for the construction of the drain, payable from the assessments levied as above.   The bonds were dated November 1, 1925; they bore interest at the rate of 5½ per cent. per annum; they matured serially, the first maturing May 1, 1928, the last to come due May 1, 1940.   The right of the Royal Oak drain district to construct this drain, to issue bonds and levy assessments

---

* See CL 1948, § 261.1 et seq. (Stat Ann and Stat Ann 1947 Cum Supp § 11.1 et seq.).—REPORTER.

therefor was upheld in the case of *Royal Oak Drain District* v. *Keefe* (CCA), 87 F2d 786. The opinion in that case held that the drain district is a corporate entity which may sue and be sued. The opinion also sets forth some of the underlying facts involved in the present case. No question is raised here as to the right to build the drain or to issue bonds.

Due to the questioning of the legality of the drain and the litigation that ensued (*Royal Oak Drain District* v. *Keefe, supra*) no instalments were levied for the years 1932 to 1936, both inclusive. Instalments had been levied for the years 1926 to 1931, both inclusive, and a large number of bonds retired from the collections therefrom. In 1937, a supplemental special assessment roll was made in which the unlevied instalments were divided into 25 instalments to be spread in the years 1937 to 1961, both inclusive. The interest, accrued to date, on the unlevied instalments was divided into 10 instalments to be spread on the special assessment roll for the years 1937 to 1946, both inclusive. Instalments were levied in 1937 and subsequent years, and no question is raised as to them.

On August 31, 1939, there was still due on the original bond issue the principal sum of $2,898,000, and unpaid interest in the sum of $1,080,997.50. The following month plaintiff, as county drain commissioner, submitted a plan of composition to the creditor bondholders. An action was filed in the United States district court for the eastern district of Michigan, southern division, for confirmation of the plan of composition under the provisions of chapter 9 of the Federal bankruptcy act (11 USCA, §§ 401–404). The plan, as finally approved by the court and also by the public debt commission of the State of Michigan (now the municipal finance commission), was confirmed by decree of the Federal court on February 6, 1941. Plaintiff drain commissioner

then entered an order in conformity with the plan of composition as approved by the court, and it is his rights and duties under this order which he seeks to have judicially determined. Under the plan of composition and order refunding bonds were issued, dated May 1, 1937, bearing interest which graduated from 1 per cent. to $4\frac{1}{2}$ per cent. per annum, and maturing in 30 years, but subject to retirement by tenders or call as funds were available from year to year as provided by law. Past due interest on the original bonds was paid, 42 per cent. in cash and the remainder in certificates of indebtedness payable within 10 years. The principal amount of the refunding issue was $2,896,000 to be exchanged for equivalent amount of the original bonds. The exchange of bonds was made except for a few bonds, the owners of which could not be located, but a sufficient amount of refunding bonds together with cash and certificates of indebtedness for the interest on such bonds were held in escrow for such owners. Further details of the refunding plan are not important except as they appear in that part of the order of the drain commissioner, the legality and construction of which is the subject of the present suit. Plaintiff seeks to have determined in the present suit his right to proceed under the provisions of the following two paragraphs of the order. Paragraph 7 of the drain commissioner's order, pertaining to the levying of additional assessments in case of a deficiency, is as follows:

"An annual accounting shall be made on August 1st of each year commencing with the year 1947 of the amount of outstanding bonds and certificates of indebtedness, if any, and of the amount in said Royal Oak drain sinking fund. Beginning with the year 1947 there shall be levied upon the tax rolls of each year an amount sufficient to pay the interest maturing during the next calendar year and in addi-

tion thereto, an amount equal to the principal of the refunding bonds and certificates of indebtedness (if any) outstanding on August 1st of the year of levy, divided by the number of years remaining between May 1st of such year and May 1, 1967 (the dividing figure being 20 for the year 1947 and one less for each subsequent year). If the amount of the instalment of the 1937 supplemental special assessment roll to be spread upon the tax roll of any such year (exclusive of any part thereof cancelled by the terms of PA 1937, No 155, as amended*) shall not be equal to the amount to be levied under the requirements of the foregoing sentence, then any such difference shall be levied under the provisions of CL 1929, § 4940, as amended by PA 1939, No 129,† against the various political subdivisions and parcels of land in the special assessment district, in proportions as originally assessed; provided that the additional levies herein required to be made under the provisions of CL 1929, § 4940, as amended by PA 1939, No 129, shall not in any year prior to the year 1965 exceed four per centum of the original assessment against each such political subdivision and parcel of land. In determining the total amount to be levied each year there shall be deducted any moneys in the sinking fund available for the retirement of refunding bonds and certificates of indebtedness."

Pertinent parts of paragraph 8 of the drain commissioner's order pertaining to the retirement of the refunding bonds are as follows:

"If, between May 1st and October 31st of any year, there shall be an amount in the Royal Oak drain sinking fund in excess of the succeeding November 1st and May 1st interest requirements on all outstanding refunding bonds and if between November 1st of any year and April 30th of the fol-

* See CL 1948, § 211.351 *et seq.* (Stat Ann 1947 Cum Supp § 7.951 *et seq.*).—Reporter.

† CL 1948, § 270.18 (Stat Ann 1947 Cum Supp § 11.104).—Reporter.

lowing year there shall be an amount in the Royal Oak drain sinking fund, exclusive of collections made upon drain taxes becoming due during such period, in excess of the succeeding May 1st interest requirements on said refunding bonds, all prior interest requirements having been met or provided for, the county drain commissioner shall advertise for tenders of refunding bonds and certificates of indebtedness, as provided in PA 1932 (1st Ex Sess), No 13, § 8, as amended, and if tenders are received at or below par and accrued interest, he shall purchase bonds and/or certificates of indebtedness so tendered at the lowest price or prices (taking into consideration the interest factor to November 1, 1949) to the amount of such excess; provided that the county drain commissioner shall not be required to so advertise for tenders if the amount of such excess is less than $25,000. If sufficient tenders are not received to consume the moneys available therefor, then the county drain commissioner shall call refunding bonds, selected by lot, for redemption at the earliest possible date to the amount so available, provided that the county drain commissioner shall not be required to call refunding bonds for redemption as aforesaid in smaller amounts than $10,000."

Questions arose in regard to the plan and order, and especially as to the right to make the additional assessments in 1947 and subsequent years as provided in paragraph 7 of the order, because of subsequent legislation and decisions of this Court. The drain commissioner being in doubt as to his rights and duties under the order and in order to avoid any personal liability, and also to settle other questions which had arisen, filed a petition for a declaratory judgment. The right to file the petition was attacked in the court below and one of the claims of error in this Court is the fact that the court below entertained the petition for a declaratory judgment and entered a decree as prayed for.

The decree appealed from in the instant case provided that the drain commissioner should make additional assessments in accordance with paragraph 7 of the order, except that lands, title to which had become absolute in the State through tax sales, even though now in the hands of private individuals, were exempt from such additional assessments; that in levying such additional assessments against the remaining land and the political units subject thereto, they should be in no greater amount as to the respective parcels, and municipalities than if none of the land in the drain district was exempt; and that the political units assessed at large must pay all instalments of such assessments in full whether they collect them for their taxpayers or not. Edgar B. Whitcomb, Anna S. Whitcomb and Henry J. Helmers, bondholders named as defendants, have appealed, and the cities of Pleasant Ridge and Huntington Woods, Ashton J. Berst and Edwin H. Waterhouse, taxpayers of said cities, also named as defendants, have cross-appealed. We shall refer to them respectively as appellants and cross-appellants. The decree dismissed the bill as to certain private parties, named as defendants, who had paid their assessments in full. They stand in the same position as if they had not been originally named as defendants.

The court was correct in entertaining jurisdiction and in entering a decree. Numerous questions were raised by the parties and there was an actual controversy as shown by the total disagreement between the plaintiff, appellants and cross-appellants. From what will appear hereafter it will be readily seen that the plaintiff, county drain commissioner, was confronted with serious problems as to how to proceed and that he might assume a great risk if he proceeded along either of the lines suggested by the appellants or cross-appellants. Section 1 of the

declaratory judgment act (CL 1948, § 691.501 [Stat Ann § 27.501]) provides:

"No action or proceeding in any court of record shall be open to objection on the ground that a merely declaratory judgment, decree or order is sought thereby, and the court may, in cases of actual controversy, make binding declarations of rights whether any consequential relief is or could be claimed, or not, including the determination at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance or other governmental regulation, or any deed, will or other instrument in writing, and a declaration of the rights of the parties interested, but the foregoing enumeration does not exclude other cases of actual controversy."

Cross-appellants further claim that the decree entered in the district Federal court upholding the validity of the drain proceedings and granting a writ of mandamus directing the levying of the original assessments, reserved jurisdiction to adjudicate any further rights of the parties. (The original decree prior to appeal in *Royal Oak Drain District* v. *Keefe, supra.*) It is true that in the decree in that case the judge did reserve jurisdiction for the purpose of carrying that decree into effect, and to grant any further relief necessary. Cross-appellants contend that the State courts have no jurisdiction as it would be a collateral attack on the decree of the Federal court. The court properly refused to dismiss the case on this ground. This is not a collateral attack on such decree as there are no questions raised in this case as to the validity of the drain proceedings or the issuing of the original bonds and the right and duty of the drain commissioner to levy the original assessments. Those were questions passed on by the Federal court. Subsequent to that decree, the original bonds were refunded by the issu-

ing of new bonds under a plan of composition approved by the Federal court. Entirely new questions are raised in the case at bar.

The main difficulty arises from the fact that absolute title to approximately two-thirds of the privately-owned land in the district, subject to 38.90765 per cent. of the assessed cost of the drain, was acquired by the State through the 1938 and subsequent tax sales, and land subject to 1.3329 per cent. of the assessed cost of the drain was deeded to school districts and the assessments cancelled. Though most of the lands whose title passed to the State through the tax sales has been returned to private ownership by so-called "scavenger" sales, there seems to be a probability that a deficiency in the Royal Oak drain sinking fund on account of these lands, through such sale, were freed from all further liability for assessments for the Royal Oak drain. This was taken into account in the provision in paragraph 7 of the drain commissioner's order which provides for supplemental assessments against all the land in the district to make up such deficiencies as permitted by the statute referred to in paragraph 7 (*supra*). Such supplemental assessments were not to be levied until 1947 and subsequent years. However, after the plan of composition was approved and the drain commissioner's order made, this Court held that land, the absolute title to which had been acquired by the State, when sold at the so-called "scavenger" sales was freed not only from all prior taxes and special assessments, but also was freed of the possibility of further assessments for benefits to the land by public improvements made prior to the State acquiring title. *Municipal Investors Ass'n* v. *City of Birmingham*, 298 Mich 314; affirmed *Municipal Investors Ass'n* v. *Birmingham*, 316 US 153 (62 S Ct 975, 86 L ed 1341), and *Keefe* v. *Oakland County Drain Commissioner*, 306 Mich 503; affirmed *Keefe* v.

*Clark, Drain Commissioner of Oakland County,* 322 US 393 (64 S Ct 1072, 88 L ed 1346). Also, see *Wood* v. *Village of Rockwood,* 311 Mich 381.

Appellants ask us to reverse our former decisions determining that lands which have passed through "scavenger" sales were exempt from future assessments for prior benefits to the land. This we decline to do, nor do we find it necessary to repeat what was said in the former cases.

Appellants further contend that the decree of the Federal court approving the plan of composition determined that the drain commissioner had the power to levy such additional assessments and that such decree is binding on the parties to this suit. Even if the taxpayers were bound by the decree of the Federal court in the composition proceedings, such decree would not be binding as to the rights and duties of the drain commissioner under State laws, the construction and interpretation of which by the State courts are binding on the Federal courts. In *Bloomfield Village Drain District* v. *Keefe* (CCA), 119 F2d 157, it was held:

"Decrees of Michigan court construing the Michigan county drain law were binding on Federal court in action on drain districts' bonds." (Syllabus.)

Also, see *Erie Railroad Co.* v. *Tompkins,* 304 US 64 (58 S Ct 817, 82 L ed 1188, 114 ALR 1487).

The provisions in paragraph 7 of the drain commissioner's order as to the additional assessments in case of a deficiency in the drain district's funds, are in accordance with chapter 10, § 18 of the drain law, as amended by PA 1939, No 129 (CL 1948, § 270.18 [Stat Ann 1947 Cum Supp § 11.104]), which provides:

"If there is not sufficient money in the fund in a particular drain at the time of the maturity of the bonds last to mature to pay all outstanding bonds

with interest, whether such insufficiency is due to the anticipation of instalments as provided in the preceding section, or to failure to sell any lands for delinquent taxes, or to any other cause, it shall be the duty of the commissioner to at once levy an additional assessment as *hereinbefore provided* in such an amount as will make up the deficiency; and in case bonds or other evidences of indebtedness are issued pursuant to Act number 13 of the Public Acts of 1932, first extra session, and acts amendatory thereto, to refund the outstanding indebtedness of a drain district, the governing body of such drain district shall provide, subject to the directions of the public debt commission, for such additional levies of assessments as it shall deem necessary to prevent default in payment of interest on such obligations, and the maintenance of a sinking fund for their retirement, and it shall be the duty of every officer charged with the determination of the amount of taxes to be raised, or the levying of such taxes, to make or to cause to be made the additional levies as provided. Any surplus remaining after the payment of the bonds and interest shall remain in the county treasury and be used for the maintenance of the drain."

In construing the words "hereinbefore provided," which we have italicized, reference is made to chapter 9, § 3 of the drain law (CL 1929, § 4917, CL 1948, § 269.3 [Stat Ann § 11.81]), which provides in part:

"Whenever the amount assessed for the construction of any drain shall not be sufficient to complete the same, and to pay all the costs and incidental expenses or to pay the principal and interest on bonds if such are issued, a further assessment shall be made to meet the deficit or additional expense. *Such further assessment shall be apportioned, assessed, levied and collected as provided in the first instance, and on the same percentage,* and shall be collected in 1 year, but there shall be no review of nor appeal from such further assessment." (Emphasis added.)

Cross-appellants claim that the above section of the statute providing for additional assessments in case of a deficiency is unconstitutional as it does not provide that the new assessment must be based on and may not exceed the benefits to the land by the drain when added to the assessment already levied, and further that as there is no hearing as to the apportionment of the added assessments, it violates the due process of law provisions of the State* and Federal Constitutions.† It is true that special assessments for a public improvement, such as a drain, must be based on the special benefits to the land assessed therefor. Cross-appellants claim that such benefits must be measured by the enhanced value of the land due to the drain as determined many years after the drain was constructed. This is not correct. Drains are not only for the purpose of improving the land, but are also for improving the sanitation and health of the residents and municipalities of the entire district. The exact and actual monetary benefit to any individual parcel of land would be difficult to measure and at most can only be estimated with a fair degree of exactness. The original assessments were properly levied and are not questioned. No finding was made as to the actual monetary benefits to the lands, the statute requiring that the costs of the drain be apportioned by percentages according to the benefit to the land. The additional assessments are based on the same percentages as the original assessments and thus are based on the benefits to the land as originally determined. There is nothing capricious, arbitrary or fraudulent in so basing the added assessments for the deficiency on the prior determination of benefits to the land unappealed from.

---

* See Mich Const 1908, art 2, § 16.—REPORTER.
† See US Const, Am 14.—REPORTER.

At the time of the original apportionment of benefits to the lands full opportunity for hearing and appeal from such apportionment is provided by the statute. (CL 1948, § 266.4 *et seq.* [Stat Ann § 11.59 *et seq.*].) As the added assessments are based on the same percentages as the original apportionment, there is no new determination of benefits to the land, the parties have had full opportunity of hearing on such apportionment. Thus there is no denial of due process of law in not providing for new hearings. A similar rule is applied as to added assessments for repairs or additional costs of constructing the drain. In *Thomas* v. *Sullivan,* 230 Mich 108, 115, it was said:

"We discover nothing of significance alleged in the instant bill which was not heard and decided upon its merits in the first chancery suit, except Sullivan's special assessment to meet a deficit. The apportionment of benefits for the whole drain, whatever it might cost, was made by the special commissioner from Washtenaw county. Sullivan's subsequent duties in the matter were purely ministerial, including the making of further assessment to meet deficiencies. The statute already quoted provides that such assessment 'shall be apportioned, assessed, levied and collected as provided in the first instance, and on the same percentage,  *  *  *  but there shall be no review of nor appeal from such further assessment.' The further assessment in this case was spread on the same percentage of benefits as in the first instance."

Also, in *Breiholz* v. *Board of Supervisors of Pocahontas County, Iowa,* 257 US 118 (42 S Ct 13, 66 L ed 159), it was held:

"A State law under which a drainage district has been established, the ditches constructed and the cost assessed upon the landowners in proportion to benefits, all after due notice and opportunity to be heard, does not violate their right to due process, under

the Fourteenth Amendment, in empowering a supervising board, without further notice, to determine the necessity and extent of cleaning and repairs, and to assess the cost upon the lands in proportion to the original assessments." (Syllabus.)

We do not find that there is any denial of due process in the provision for added assessments in case of a deficiency in this section of the statute.

Cross-appellants further claim that the lower court erred in ordering the municipalities to pay in full the amount assessed at large against them irrespective of whether or not they have collected it all from their taxpayers. They rely on the case of *Township of Waterford* v. *Wilson,* 257 Mich 619, where we said (syllabus):

"Where a county is assessed at large for a percentage of cost of highway improvement under Covert act (1 Comp Laws 1929, § 4314 *et seq.**), a township also assessed at large for a percentage of said cost is required to pay to the county treasurer only the amount collected by its treasurer, and not the full amount of the tax so spread (section 4341)."

There was nothing in that case that presented the question of the right of a drain commissioner to collect from the municipalities the amount assessed at large against them under the drain law. Though it was not binding on the court nor considered by them in the above case, we believe the correct statement of the law was given by the Attorney General on this question in an opinion in 1924, as follows:

"Under this provision,† the drain taxes at large assessed against the township are included in the column with other township taxes. The township treasurer must therefore, pay the county treasurer

---

* See CL 1948, § 247.415 *et seq.* (Stat Ann and Stat Ann 1947 Cum Supp § 9.711 *et seq.*).—REPORTER.
† See CL 1948, § 270.3 (Stat Ann § 11.89).—REPORTER.

in full for all drain taxes assessed against the township at large each year, whether collected or not. When the tax is collected thereafter by the county treasurer through a sale of the premises or otherwise, it will be refunded to the townships." Opinions of Attorney General, 1923–1924, pp 306, 307.

The main benefits of a drain to a village or a city are the improved health and sanitation of that municipality as well as benefits to the streets. No complaint was made at the time the original assessments were made, and it becomes a general obligation of the city or village. The municipalities, the same as the townships under the opinion of the Attorney General cited above, are liable for the amount assessed against them at large whether they collect it or not from their taxpayers.

Appellants contend that if the Court does not reverse its former decisions in cases where it held that the "scavenger lands" are exempt, then the remaining lands and political units should bear the full deficiency. The trial judge, in his opinion as well as in the decree, stated:

"Further, in order to comply with such decisions, the drain commissioner in levying such additional assessments upon lands other than those last mentioned, and upon political units, shall assess them no greater amounts than would be assessable against them if there were no lands exempted by reason of the conditions above mentioned."

This is a correct application of the rule set out in *Keefe* v. *Oakland County Drain Commissioner, supra,* and what was said in that case need not be repeated here.

Some question has arisen in regard to the liability of the county in case of a final deficiency in the payment of the bonds. The trial court said:

"That the matter of whether or not the county of Oakland shall advance moneys to pay the outstand-

ing obligations of the Royal Oak drain district, and the extent of such advancement, if any, and any other matters on which declarations of right are sought in any of the pleadings herein, which are not expressly covered by this decree or necessarily involved in the matters here determined, shall be deemed not to have been passed upon and inappropriate for a declaratory decree at this time."

The trial court was correct as the question of liability of the county depends on many factors not now before the Court and which will not arise till the maturity date of the bonds and so it is not passed on by this Court either.

The trial court further decreed:

"It is the duty of the drain commissioner, and he is hereby directed and enjoined to perform paragraph 8 of his order dated April 17, 1941, copy of which is exhibit 4 attached to the petition herein, and he is directed to proceed as therein provided, whenever the conditions therein specified shall occur or exist upon which bonds and certificates of indebtedness of Royal Oak drain district should be retired on tender or call for redemption."

The question was raised as to whether in view of the fact that an insufficient amount may be raised through the assessments to retire all the bonds, and there may be a loss to some of the bondholders, that the moneys collected from the assessments should be distributed *pro rata,* or at least a limit be set above which no tenders need be accepted by the drain commissioner. We would be much impressed by this claim were it not for the fact that we are dealing with a statutory proceeding which provides for the redemption of such refunding bonds. Paragraph 8 of the drain commissioner's order, set out above, is strictly in accordance with the provisions of PA 1932 (1st Ex Sess), No 13, under which these refunding bonds were issued. All bondholders who

are apprehensive that there will be an insufficient amount realized from the assessments to pay their bonds and interest at maturity or fear the outcome of further litigation that may follow, have an equal right to tender their bonds from time to time as moneys are available for payments, and if they do not so tender them, the bonds to be paid are selected by lot. The trial court was correct in adhering to the statute.

Other questions raised in the briefs are immaterial to the issues and do not warrant discussion.

The decree of the lower court is affirmed, and the case remanded for the purposes set out in that decree. As a public question is involved, no costs will be allowed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.