DAVIS v CITY OF WESTLAND

1. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—BENEFITS.

The assessor's job in preparing special assessment rolls is not only to assess those who are benefited but also to protect the community and other citizens, who are not benefited, from having to pay for the improvements.

2. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—BENEFIT—FRONT-FOOT FORMULA.

There is no requirement that the benefit to the property of those specially assessed be measured in terms of actual resulting benefit to the property—increased market value; the front-foot method has been specifically approved for use in Michigan and this method roughly approximates the benefits, assuming that all abutting owners benefit equally.

3. APPEAL AND ERROR—SPECIAL ASSESSMENTS.

The Court of Appeals will not ordinarily interfere with the amount of special assessments where the property owners did not argue that they were not benefited, but merely that the assessments were too high, because this is a legislative act.

4. MUNICIPAL CORPORATIONS—ASSESSMENTS—MISTAKES—ERRORS—REMEDY.

Mistakes and admitted errors by an assessor should be corrected before confirmation of the rolls; the remedy is not a voiding of the entire assessment, which is done only when an assessment is so arbitrary or discriminatory as to be substantially unfair.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Special or Local Assessments § 126.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 494.
[2, 5] 48 Am Jur, Special or Local Assessments § 67.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 107.
[4] 48 Am Jur, Special or Local Assessments §§ 185, 190.
[6] 27 Am Jur 2d, Equity § 238.

5. MUNICIPAL CORPORATIONS—ASSESSMENTS—EXEMPTIONS—VALIDITY —SIDE-LOT EXEMPTION.

An absolute adherence by an assessor to the front-foot method of special assessment might result in injustice and in such a case the assessor would be obliged to adjust the assessments; where a side-lot exemption is an effort to apportion equally the cost of improvements, the fact that a city council resolution did not specifically authorize every type of variation in the assessments is not controlling (MCLA 104.9).

6. EQUITY—APPEAL AND ERROR—FINDINGS OF FACT—WEIGHT.

The Court of Appeals gives weight to lower court findings in an equity case on appeal although it is not bound by such findings.

Appeal from Wayne, James L. Ryan, J. Submitted Division 1 October 5, 1972, at Detroit. (Docket Nos. 12535–12536.) Decided March 26, 1973.

Complaint by Arthur Davis, Nellie Davis, All-state Homes, Inc., and others against the City of Westland, its city council and various city officials, for a declaratory judgment to void a special assessment. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Munger, Ebel, Reagan & Crum,* for plaintiffs.

*John J. Nellis,* City Attorney, and *Miller, Canfield, Paddock & Stone* (by *Gilbert E. Gove* and *William O. Hochkammer),* for defendants.

Before: LESINSKI, C. J., and FITZGERALD and J. H. GILLIS, JJ.

LESINSKI, C. J. Plaintiffs sought a declaratory judgment to void a special assessment by the defendant City of Westland. They were granted a temporary injunction to restrain confirmation of the assessment rolls pending trial. The trial court found for the defendants. Plaintiffs appeal as of right.

The City Council for the City of Westland, in an effort to improve the streets and the districts in which plaintiffs have interests, adopted several resolutions for the paving and drainage of specific streets in those districts. On March 15, 1971, the city council adopted resolution #3 which directed the city assessor to prepare special assessment rolls, apportioning the costs according to "front foot benefit". The assessor used the following method of determining the assessments. He took a $24 per foot cost figure as determined by an engineering firm and applied this to the abutting property on a front-foot basis. (This $24 is substantially less than the actual cost—the city absorbing the difference.) He made certain exceptions for corner lots and some exceptions for irregularly shaped lots.

Plaintiffs first contend that the assessor should have determined the resulting benefit to each parcel of land to be assessed. They base this claim on the Westland Charter, 1966, art XII, § 12.1, which provides: "The total amount assessed against any lot or parcel of land shall not exceed the value of the *benefits* received from the improvement". (Emphasis supplied.) They also cite *Crampton v Royal Oak*, 362 Mich 503, 523 (1961): "The only assessment that can properly be made under statutory and charter provisions applicable here must rest on the foundation of the benefits received by the property affected".

There is, of course, a general principle that the only justification for a special assessment is that those assessed are receiving special benefits and should therefore pay for them. *Carmichael v Beverly Hills,* 30 Mich App 176 (1971). A natural corollary of this principle is that those who are not specially benefited should not be charged for the

improvement. The assessor's job is not only to assess those who are benefited, but also to protect the community and other citizens who are not benefited from having to pay for the improvements.

As the defendants point out, plaintiffs here have mistakenly assumed that there are two tests to determine assessments, a benefit test and a front-foot test. Actually there is only one test which seeks to spread the entire cost of the improvements evenly over those receiving special benefits therefrom. There is much language in statutes and cases concerning *benefit* to the property of those specially assessed. There is, however, no requirement that the benefit be measured in terms of actual resulting benefit to the property—increased market value. *Foren v Royal Oak,* 342 Mich 451 (1955). The front-foot method has been specifically approved for use in Michigan. *Auditor General v Konwinski,* 244 Mich 384 (1928). This method roughly approximates the benefits, assuming that all abutting owners benefit equally. *Spear v Fenton Twp,* 17 Mich App 682, 683, 684 (1969), is directly on point:

"The pertinent part of § 5 describes the total amount to be assessed against each parcel of land as: 'such relative portion of the whole sum to be levied against all parcels of land in the special assessment district as the benefit to such parcel of land bears to the total benefit to all parcels of land in the special assessment district.' It is plaintiffs' position that they were assessed only on the basis of front footage and that assessment by front foot is not authorized by the statutory language above quoted. Plaintiffs do not deny they will benefit from the sewer, in fact they want it; they contest the amount of such benefit.

\*   \*   \*

"The statute involved does not preclude the use of the

front foot method of assessment, nor do the authorities relied on by plaintiffs establish that the use of the front foot method of assessment is impermissible under the statutory language."

And in *Axtell v Portage,* 32 Mich App 491, 496 (1971), this Court said:

"Plaintiffs also contend that the formula used by the cities to arrive at the amount of the special assessment is improper. Defendants have one formula for all special assessment situations based upon the theory that any street is of about equal benefit to the frontage owner. It is plaintiffs' position that the assessors must employ a 'balancing test', *i.e.,* weighing special benefits against special detriments, to compute the amount of the assessment.

"We cannot agree with the plaintiffs' position."

Many of the cases cited by the plaintiffs are ones in which the party received no benefit at all, and it was therefore unjust to assess the cost to him. Plaintiffs here were clearly benefited by the paving of the street on which their property abutted. In fact, plaintiffs did not argue that they were not benefited but merely that the assessment was too high. We will not ordinarily interfere with the amount of the assessments, as this is a legislative act. In *Marks v Detroit,* 246 Mich 517, 523 (1929), the Court said:

"In the absence of fraud or bad faith or the following of a plan incapable of producing reasonable equality, their judgment must be held to be conclusive."

Plaintiffs also cite cases in which the assessment of one party was clearly out of proportion and unjust. We find evidence in the record of mistakes and admitted errors by the assessor. These of course should be corrected before confirmation of

the rolls, but the remedy is not a voiding of the entire assessment. This is only done when an assessment is so arbitrary or discriminatory as to be substantially unfair.

Plaintiffs also contend that the exemptions applied by the assessor prevent the assessments from being valid because these exemptions were not in accord with the city council directives. However, the assessor testified that the side-lot exemptions and other adjustments to the front-foot method were administrative determinations by the Westland administrative department heads and city council. The assessor was merely acting in conformity with their discussions on these matters. In some instances he was required to exercise his own discretion. The fact that a council resolution did not specifically authorize every type of variation is not controlling.

An absolute adherence to the front-foot method might result in injustice. In such a case the assessor would be obliged to adjust the assessments. Here the side-lot exemption was merely an effort to equally apportion the cost of the improvements. MCLA 104.9; MSA 5.1833 specifically authorizes this type of adjustment:

"If the assessment is required to be according to frontage, the board of assessors shall assess to each lot or parcel of land such relative portion of the whole amount to be levied as the length of front of such premises abutting upon the improvement bears to the whole frontage of all the lots to be assessed, unless on account of the shape or size of any lot, an assessment for a different number of feet would be more equitable. If the assessment is directed to be according to benefits, they shall assess upon each lot such relative portion of the whole sum to be levied as shall be proportionate to the estimated benefit resulting to such lot from the improvement."

*Spear* also speaks to this issue (p 683):

"Defendants contend the assessment was not solely on a front foot basis, but on a front foot basis with allowance for location and shape of the lots involved. The trial court found, and the record supports the finding, that location and shape of lot were considered in assessing benefits. The trial court further found that on the facts, the front foot method of assessment for benefits was fair and equitable."

These variations were found by the trial court to have been uniformly applied. The trial court found:

"The court concludes that there was a system adopted in Westland to treat the exceptional circumstances encountered in a reasonable and uniform way. Church owned properties for construction of church buildings were uniformly not afforded the side lot exemption. Commercial properties as a class were uniformly not afforded the side lot exemption. Properties employed as residences under the evidence were uniformly favored with the side lot exemption. That is a reasonable construction of a mandate from the common council—city council—again, if not the construction that the court would impose if it was [an] elected city official, nevertheless it was. The court can't conclude that those were unreasonable constructions to be put upon the mandate of the council, both in the charter, the ordinance and the resolution. For those reasons, the court's judgment is that * * * the assessment which was imposed under the evidence in this case is one in which the benefit to each property assessed is in proportion to the cost of improvements and in excess thereof; and the manner in which the assessment was imposed under the evidence as it has been introduced cannot be said by this court to be outside the scope of the ordinance or of the charter, nor can it be said as a matter of law to be unreasonable."

Although we are not bound by the lower court

findings in an equity case, we do give them weight on appeal. *Insealator, Inc v Wallace,* 357 Mich 233 (1959). On the facts of this case, we agree with the findings of the trial court.

Affirmed. No costs, a public question being involved.

All concurred.