**Anna BUEHLER, Plaintiff and Appellant,**

v.

**The CITY OF MANDAN, a Municipal Corporation, Defendant and Appellee.**

**Civ. No. 9160.**

Supreme Court of North Dakota.

March 3, 1976.

Bair, Brown & Kautzmann, Mandan, for plaintiff and appellant; argued by Dwight C. H. Kautzmann, Mandan.

Richard P. Gallagher, Mandan, for defendant and appellee.

ERICKSTAD, Chief Justice.

In this case the plaintiff, Anna Buehler, appeals from that part of the judgment of the District Court for the County of Morton which confirmed the special assessments levied by the defendant, City of Mandan, against the plaintiff's property and which denied the plaintiff's prayer for an injunction to restrain the City from levying and collecting the special assessments against her property in Street Improvement District No. 46 within the City of Mandan.

Buehler's major complaint is not that her property was assessed at a higher rate than other property within the district or that her property differed greatly or was of less value than the other property in the district. Her complaint is that the City used a formula for assessing the property throughout the district based on square feet which did not comply with Chapter 40–23.1, N.D. C.C. Her position is that if square feet are to be used as a basis for the determination of the benefits that the Special Assessment Commission must then apply the provisions of Chapter 40–23.1, N.D.C.C., rather than the provisions of Chapter 40–23, N.D.C.C.

The pertinent provisions of Chapter 40–23.1, N.D.C.C., follow:

"40–23.1–01. Improvement district—All property to be assessed—Basis.—All property included within the limits of a local improvement district shall be considered to be the property specially benefited by the local improvement and shall be the property to be assessed to pay the cost and expense thereof or such part thereof as may be chargeable against the property specially benefited. The cost and expense shall be assessed upon all the property in accordance with the special benefits conferred thereon in proportion to area and distance back from the marginal line of the public way or area improved.

"40–23.1–02. Improvement district—Zones.—For the purpose of ascertaining the amount to be assessed against each separate lot, tract, parcel of land or other property therein, the local improvement district shall be divided into subdivisions or zones paralleling the margin of the street, avenue, lane, alley, boulevard, park drive, parkway, public place, or public square to be improved, numbered respectively first, second, third, fourth, and fifth.

"The first subdivision shall include all lands within the district lying between the street margins and lines drawn parallel therewith and thirty feet therefrom.

"The second subdivision shall include all lands within the district lying between lines drawn parallel with and thirty and sixty feet respectively from the street margins.

"The third subdivision shall include all lands within the district lying between lines drawn parallel with and sixty and ninety feet respectively from the street margins.

"The fourth subdivision shall include all lands, if any, within the district lying between lines drawn parallel with and ninety and one hundred twenty feet respectively from the street margins.

"The fifth subdivision shall include all lands, if any, within the district lying between a line drawn parallel with and one hundred twenty feet from the street margin and the outer limit of the improvement district.

"40–23.1–03. Assessment rate per square foot.—The rate of assessment per square foot in each subdivision of an improvement district shall be fixed on the basis that the special benefits conferred on a square foot of land in subdivisions first, second, third, fourth, and fifth, respectively, are related to each other as are the numbers forty-five, twenty-five, twenty, ten, and five, respectively, and shall be ascertained in the following manner:

"1. The products of the number of square feet in subdivisions first, second, third, fourth, and fifth, respectively, and the numbers forty-five, twenty-five, twenty, ten, and five, respectively, shall be ascertained;

"2. The aggregate sum thereof shall be divided into the total cost and expense of the improvement;

"3. The resultant quotient multiplied by forty-five, twenty-five, twenty, ten, and five, respectively, shall be the respective rate of assessment per square foot for subdivisions first, second, third, fourth, and fifth; Provided, that in lieu of the above formula the rate of assessment per square foot in each subdivision of an improvement district may be fixed on the basis that the special benefits conferred on a square foot of land in subdivisions first, second, third, fourth, and fifth, respectively, are related to each other as the numbers 0.015000, 0.008333, 0.006666, 0.003333, and 0.001666, respectively; and the method of determining the assessment on each lot, tract, or parcel of land in the improvement district may be ascertained in the following manner:

"a. The products of the number of square feet in subdivisions first, second,

third, fourth, and fifth, respectively, for each lot, tract, or parcel of land in the improvement district and the numbers 0.015000, 0.008333, 0.006666, 0.003333, and 0.001666, respectively, shall be ascertained. The sum of all such products for each such lot, tract, or parcel of land shall be the number of 'assessable units of frontage' therein;

"b. The rate for each assessable unit of frontage shall be determined by dividing that portion of the total cost of the improvement representing special benefits by the aggregate sum of all assessable units of frontage;

"c. The assessment for each lot, tract, or parcel of land in the improvement district shall be the product of the assessable units of frontage therefor, multiplied by the rate per assessable unit of frontage." N.D.C.C.

It is Buehler's contention that had those sections of Chapter 40–23.1 been applied to her property that her assessment would have been considerably less than it was ascertained to be by the Special Assessment Commission.

The City on the other hand contends that it applied the provisions of Section 40–23–07, N.D.C.C., and that in so doing, it was permitted to use a square-foot formula in conjunction with a personal inspection of the property by the special assessment commissioners. The pertinent part of Section 40–23–07, N.D.C.C., follows:

"40–23–07. Regulations governing determination of special assessments by commission—Political subdivisions not exempt.—Whenever the commission is required to make any special assessment under the provisions of this title, the members thereof personally shall inspect any and all lots and parcels of land which may be subject to such special assessment and shall determine from such inspection the particular lots and parcels of land which, in the opinion of the commission, will be especially benefited by the construction of the work for which the assessment is to be made. The commission shall determine the amount in which each of the lots and parcels of land will be especially benefited by the construction of the work for which such special assessment is to be made, and shall assess against each of such lots and parcels of land such sum, not exceeding the benefits, as shall be necessary to pay its just proportion of the total cost of such work, or of the part thereof which is to be paid by special assessment, including all expenses incurred in making such assessment and publishing necessary notices with reference thereto and the per diem of the commission. *However, as an alternative to the procedure heretofore provided in this section, the special assessment commission may, in its discretion, determine and allocate the cost of special assessments in accordance with the method provided for in chapter 40–23.1.* * * *" [Emphasis added.] N.D.C.C.

Buehler does not contend that the special assessment commissioners did not personally inspect the property but she does assert that they did not pay significant attention to the lot lines of her property which seem to be irregular and not based upon any significant plan. The commissioners, in assessing the benefits to her property, applied the same formula as they applied in assessing the benefits to all other property with the exception of the assessment of a lot designated as Lot D which was owned by one person and surrounded by lots owned by other persons and thus was not accessible. All of Buehler's lots, whether abutting on the street which was improved or not, were contiguous and thus accessible. Since the property owned by Buehler was compact, it could have been replatted and in replatting, all lots could have been made to abut onto the improved street.

As we see it, the only issue that is before us in this appeal is whether a special assessment commission is required to apply the provisions of Chapter 40–23.1, N.D.C.C., when it uses square feet as a factor in

determining special benefits. We think not.

■ In our view the election provided for in Section 40–23–07, N.D.C.C., is with the Special Assessment Commission. If the members of the Special Assessment Commission wish to avoid personally inspecting any and all lots and parcels of land within the improvement district, they apparently may do so by utilizing Chapter 40–23.1, N.D.C.C. If they utilize Chapter 40–23.1, they may make the benefit assessments on the basis of the provisions contained in Chapter 40–23.1 without regard to other factors and without the necessity of making a personal inspection of each of the lots and parcels of land within the district. What the constitutional consequences may be of utilizing such a method, we would not wish to speculate about today. We conclude, however, that with respect to the issue presented by Buehler today, that Chapter 40–23.1 does not prohibit the use of square feet as a factor in determining benefits under Chapter 40–23, N.D.C.C.

Pertinent as to the facts, the trial court in its findings of fact, conclusions of law, and order for judgment said:

"IV.

"That prior to, during and after the construction of the improvements within the District, the Special Assessment Commission personally viewed and inspected all the lots and parcels of land within the District and within each separate property area of the District, and determined the various benefits that would accrue to each such lot or parcel of land.

"V.

"That improvements consisting of paving, curb, gutter, storm sewer and street lighting were constructed within the separate property area in which the Plaintiff's property is situated.

"VI.

"That in the latter part of November 1972 the City Engineer certified the final cost of constructing the improvements to the City Auditor which, together with the cost items of interest during construction, engineering, legal, publications, fiscal and other expenses, were capitalized as the total cost of improvements within the District.

"That thereafter the total cost of such improvements in the amount of $304,-500.00 was certified to the Special Assessment Commission to be apportioned to the various lots and parcels of land in proportion to the benefits to be derived from such improvements. In addition to the total cost of constructing such improvements within the District, the City Engineer provided the Special Assessment Commission with a detailed accounting of each item of construction costs incurred in constructing the various types of improvements within each separate property area of the District, plus an apportionment of the other cost items such as construction interest, engineering, etc., based on the ratio that the total construction costs within each separate property area bore to the total cost of constructing the improvements within the entire District.

"VII.

"That thereafter the Special Assessment Commission considered various methods of determining benefits and spreading assessments within the District. The Commission determined that based on their inspections of the various properties, that:

"a) each lot or parcel of land was benefited in direct ratio to the total square footage of each such lot bore to total square footage of property in the District;

"b) each lot or parcel of land similarly situated received similar benefits from similar types of improvements constructed within the District and within each separate property area of the District;

"c) the benefits found to accrue to the Plaintiff's property were no different than those found to accrue to any other

similarly situated property in the District or in the separate property area where similar types of improvements were constructed.

"VIII.

"The Special Assessment Commission apportioned the total cost of the improvements constructed within each separate property area against each lot or parcel within such property area in direct ratio that benefits it had found to accrue to such lot or parcel of land bore to the total amount of benefits found to accrue within such separate property area."

Although in *Soo Line Railroad Company v. City of Wilton,* 172 N.W.2d 74 (N.D.1969), the Special Assessment Commission assessed the property on a front-footage basis, whereas in the instant case, the Special Assessment Commission is using in conjunction with the personal inspection of the property a square-foot basis for determining the benefits, we think what we said in that case is applicable in this case. Syllabuses No. 4 and No. 5 of *Soo Line* are especially significant.

"4. The burden is upon the railroad to show it is not benefited and it cannot defeat an assessment for improvements for street, curb, and gutter upon the portion of its right of way which is included in the assessment district by producing evidence of before-and-after value intended to prove that it has not been benefited by the improvements.

"5. For reasons stated in the opinion, the assessment of benefits made by the special assessment commission and confirmed by the city commission for street, curb, and gutter improvements which involve judgment and discretion will not be reviewed by the court, and it is not the province of the court to substitute its judgment for that of the commission making such decision, but merely to determine whether the commission was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether there is sub-stantial evidence to support or justify the determination." *Soo Line Railroad Company v. City of Wilton,* 172 N.W.2d 74 (N.D.1969).

Relative to Syllabus No. 4 in *Soo Line,* Buehler asserts in the instant case that her property is worth less today than the total of the special assessments. Just as in *Soo Line,* the production of evidence of before-and-after value which was intended to prove that the property had not been benefited was held not material, we hold that the testimony in the instant case that the property has a value now of less than the total of the special assessments is also not material.

Applying the principles of Syllabus No. 5 in *Soo Line,* we have reviewed the evidence in this case to determine whether the assessment of benefits by the Special Assessment Commission with respect to Buehler's property are supported by substantial evidence. It is not the function of this court to try the case anew. We conclude that there is substantial evidence to support the assessment of benefits made by the Special Assessment Commission; that the Commission was acting within its jurisdiction; that it was not mistaken as to the applicable law; that the action of the Commission was not arbitrary, oppressive, or unreasonable; and that its action did not constitute constructive fraud. Accordingly, the judgment of the trial court is affirmed.

PAULSON and PEDERSON, JJ., and EMIL A. GIESE and RAY R. FRIEDERICH, District Judges, concur.

ROBERT VOGEL and PAUL M. SAND, JJ., deeming themselves disqualified did not participate; EMIL A. GIESE, Judge of the Sixth Judicial District and RAY R. FRIEDERICH, Judge of the Second Judicial District sitting in their places.