**Robert L. HAWLEY and Dorothy Hawley, Plaintiffs and Respondents,**

**and**

**Elmer Cwach and Dorothy Cwach, Plaintiffs,**

**v.**

**The CITY OF HOT SPRINGS, a Municipal Corporation, Defendant and Appellant.**

**No. 12038.**

Supreme Court of South Dakota.

March 15, 1979.

Robert L. Hawley, pro se.

Allen G. Wilson, Hot Springs, for defendant and appellant.

WOLLMAN, Chief Justice (on reassignment).

This action arises from the imposition of a special assessment for sewer improvements by the city of Hot Springs. Respondents' property involved in the assessment consisted of six lots abutting Highway No. 385 upon which were situated a house and a five-unit motel structure.[1]

The assessment of the costs of the sewer system in this situation is controlled by SDCL 9–48–43, which provides:

The total benefit of a main or trunk sewer constructed under the provisions of this chapter shall be deemed to be not less than the total cost thereof, including the contract price and all engineering, inspection, publication, fiscal, legal, and other expenses incidental thereto, and such total cost, less amount assumed by the municipality as provided in § 9–48–44, shall be assessed against all the lots or parts of lots within the district or districts served thereby as determined by the report of the engineer or other competent person or by the governing body, as herein provided.

SDCL 9–48–45 provides alternate methods for determining the apportionment of the assessment as follows:

Whenever any main or trunk sewer is to be constructed under the provisions of this chapter it may be determined in and by the resolution declaring the necessity of the improvement that the cost thereof shall be apportioned to each lot or tract of land within the sewerage district or districts served thereby according to the benefits to accrue to such lot or tract, as determined by the governing body, or it may be provided that such cost shall be apportioned according to the frontage of property fronting or abutting thereon and the assessed valuation of property

within said district or districts, by the method provided in §§ 9–48–48 and 9–48–49.

Because the city chose to use the first alternative, SDCL 9–48–46 becomes the applicable statute for determining the "benefits" to the property. That statute provides:

If the cost is to be apportioned according to the benefits to accrue to each lot or tract, as determined by the governing body, the governing body, in preparing, considering and hearing objections to the assessment roll as provided in chapter 9–43, shall make such investigation as may be necessary and shall find and determine the amount in which each lot or tract located within said district or districts will be benefited by the construction of said improvement, and shall assess against each such lot or tract such amount, not exceeding its special benefit, as may be necessary to pay its just portion of the total cost of the work to be assessed.

■■■ Special assessments can be sustained only upon the theory that the property assessed receive some special benefit from the improvement differing from the benefit that the general public enjoys. "This is the foundation of the right to levy special assessments and without such foundation the right must fail." 14 McQuillin, Municipal Corporations § 38.32. These benefits are frequently difficult to quantify. As a result, the courts have established a presumption that the findings of a city council regarding special benefits are correct. "There is a presumption that such findings as to benefits are correct and this presumption can be overcome only by strong, direct, clear and positive proof." *Meyer v. City of Oakland Park*, Fla., 219 So.2d 417, at 420. See also *Spencer Shopping Center, Inc. v. City of Spencer*, Iowa, 200 N.W.2d 513; 14 McQuillin, Municipal Corporations § 38.184.

1. Following initiation of this appeal, the Cwachs agreed to a settlement of their challenge to the special assessment against their property and hence are not involved in this decision.

The method by which the amount of a special benefit to a piece of property is determined varies among the several states. Minnesota has apparently adopted the rule that the value of special benefits is found by determining what increase, if any, there has been in the market value of the benefited land. *In re Village of New Brighton Resolution 862*, 293 Minn. 356, 199 N.W.2d 435. The difficulty with rigidly applying this rule is that a search for increased market value resulting from the special benefit tends to examine the property's increased value in terms of the current use of the property. The better rule looks to the benefits accruing to the property in light of highest and best future use of the property that can reasonably be expected. *Goodell v. City of Clinton*, Iowa, 193 N.W.2d 91. See also 63 C.J.S. Municipal Corporations § 1372b. Accordingly, the strict market value increase rule has been rejected in a number of jurisdictions. See, e. g., *Chicago, R. I. & P. Ry. Co. v. City of Centerville*, 172 Iowa 444, 153 N.W. 106; *Foren v. City of Royal Oak*, 342 Mich. 451, 70 N.W.2d 692; *Beh v. City of West Des Moines*, 257 Iowa 211, 131 N.W.2d 488; *Soo Line Railroad Co. v. City of Wilton*, N.D., 172 N.W.2d 74; *Davis v. City of Westland*, 45 Mich.App. 497, 206 N.W.2d 750; *Buehler v. City of Mandan*, N.D., 239 N.W.2d 522; *NEBCO, Inc. v. Speedlin*, 198 Neb. 34, 251 N.W.2d 710.

We conclude that to determine special benefits solely on the basis of the increase in the current market value results in too inflexible a standard by which to judge the special benefits accruing to the affected property. Rather, we prefer the approach taken by other jurisdictions. For example, in *Clark v. City of Royal Oak*, 325 Mich. 298, 38 N.W.2d 413, the Michigan Supreme Court said:

It is true that special assessments for a public improvement, such as a drain, must be based on the special benefits to the land assessed therefor. Cross-appellants claim that such benefits must be measured by the enhanced value of the land due to the drain as determined many years after the drain was constructed. This is not correct. Drains are not only for the purpose of improving the land, but are also for improving the sanitation and health of the residents and municipalities of the entire district. The exact and actual monetary benefit to any individual parcel of land would be difficult to measure and at most can only be estimated with a fair degree of exactness. 325 Mich. at 313, 38 N.W.2d at 418.

In a similar vein, the Iowa Supreme Court has said:

Assessment cases cannot be determined with mathematical certainty. The evidence is necessarily based on opinion, some of it made more conjectural because it attempts to project the present conditions into the future. These opinions must be taken with those reservations arising from the nature of the case, the self-interest of the witnesses, and the uncertain basis upon which they rest. [citation omitted] We have, on the one hand, city officials attempting to justify a decision long since made and, on the other, property owners seeking to minimize the taxes they must pay for an improvement they did not want. Recognizing this problem, we have said, "It is exceedingly difficult to arrive at an assessment in such a case that shall be accurate and just. Approximation is all that can reasonably be expected." [citation omitted] *Goodell v. City of Clinton*, Iowa, 193 N.W.2d 91, 95.

Moreover, the benefits to the land may not be limited by the present use of the property.

In determining the benefits conferred upon property by the construction of a permanent sewer system, the amount of the benefits is not of necessity limited by the present use of the property in question, but the future prospects and reasonable expectations of the future use of a permanent sewer system may be taken into consideration in determining the benefits conferred. *Brenton v. City of*

*Des Moines*, 219 Iowa 267, 270, 257 N.W. 794, 796.[2]

In the instant case, the trial court apparently relied on the current market value approach in deciding that the assessment was excessive. Respondents' witness explained the several methods of real estate appraisal. It was his opinion that under the income approach the sewer with its concomitant assessment in fact lowered the value of the property and that under the market approach there was no immediate change from the improvements. He did, however, admit that the cost approach would result in a higher value if the cost of the assessment were added to the cost of the property. On cross examination he admitted that he did not consider possible alternative future uses of the property. He also admitted that the property with sewer access was intrinsically more valuable than without. Upon questioning by the court, he admitted that the septic tank-drain field system currently used to service respondents' property would require maintenance in the future and that any maintenance of the sewer line would be paid for by the city. The city engineer testified regarding the cost of the property and recited the process the commission went through in establishing the apportionment of the assessment. It was undisputed that lots too low for sewer service were excluded from the assessment and that the city had made a determination that the assessment was fair and equitable. The city engineer identified complaints by the state concerning the lack of a sanitary sewer system in this portion of the city. He also testified to complaints of fluids and effluviums escaping from the current septic tank-drain field systems used throughout the district. Other witnesses testified that the market value had in fact been improved by the city sewer because of the fact that lots are more saleable with sewer than without. The director of equalization testified that income, market and cost approaches to property appraisal were all combined and used in valuation.

We conclude that respondents did not present sufficient evidence to overcome the presumption that the assessment as determined by the city was correct. The judgment rendered below tends to buttress this conclusion. The trial court found that the market value of the Hawley property was $12,900. The assessment by the city in the amount of $3,669.19 is 28.44 percent of the market value. The judgment reduced the assessment to 20.27 percent of the market value, or $2,615.

On this record it cannot be said that the assessments established by the city did not bear a reasonable relationship to the benefits bestowed upon respondents' property. Accordingly, the judgment setting aside the assessment and establishing a lower reassessment is reversed.

DUNN and FOSHEIM, JJ., concur.

MORGAN, J., dissents.

HENDERSON, J., deeming himself disqualified, did not participate.

MORGAN, Justice (dissenting).

I dissent.

The majority opinion cites with approval the Iowa cases, *Goodell v. City of Clinton*, Iowa, 193 N.W.2d 91, and *Brenton v. City of Des Moines*, 219 Iowa 267, 257 N.W. 794, and then in a footnote adds that there is a statutory maximum limitation at 25% of actual value of the lot at the times of assessment. The assessment in the instant case would have been unlawful in Iowa.

The Michigan case of *Clark v. City of Royal Oak*, 325 Mich. 298, 38 N.W.2d 413, does not involve the initial special assessment but rather a supplemental assessment. The initial assessment was not questioned and is therefore deemed correct. Under Michigan statute the supplemental assessments to cover deficiencies in the funds to pay bonds were apportioned as in the first instance and on the same percentages.

The Hot Springs city council opted to apportion on a benefits accrued basis as

2. The Iowa cases should be read against the background of Iowa Code Annotated, § 391.48, which limited special assessments to no more than 25 percent of the actual value of the lot at the time of levy.

they are permitted to do under SDCL 9–48–45. However, they then failed to follow through on that theory. Nowhere in the record was there shown any action of the governing body to investigate and determine the amount in which each lot would be benefited. The trial court found that the total assessment against the property of the respondent was substantially in excess of the benefits conferred. Rather than void the entire assessment the trial court voided only that portion relating to respondent's property and ordered reassessment to a maximum of 20.27% of the value of the property. This 20.27% factor was derived from a comparison with another piece of motel property not in issue in this case.

It appears to me that the majority are not according the learned trial judge the deference due the one who hears the evidence firsthand.* There was considerable testimony taken at the hearing relating to values of property and the benefits, if any, conferred by virtue of the improvement.

I would affirm the judgment of the trial court.

---

\* *Nicolaus v. Deming*, 81 S.D. 626, 139 N.W.2d 875 (1966), and *Cunningham v. Yankton Clinic, P.A.*, S.D., 262 N.W.2d 508 (1978).