#30439-a-PJD
**2025 S.D. 22**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KJD, LLC,                                          Appellant,

v.

CITY OF TEA, SOUTH DAKOTA                          Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

JAMES E. MOORE
CHRISTOPHER A. DABNEY of
Woods Fuller Shultz & Smith P.C.
Sioux Falls, South Dakota                          Attorneys for appellant.


CLINT SARGENT
RALEIGH HANSMAN of
Meierhenry & Sargent, LLP
Sioux Falls, South Dakota                          Attorneys for appellee.

* * * *

ARGUED
APRIL 24, 2024
OPINION FILED **04/09/25**

#30439

DEVANEY, Justice

[¶1.]    The City of Tea passed a resolution imposing a special assessment against property abutting a road construction project, including property owned by KJD, LLC, after finding that the City's improvement conferred special benefits on the property abutting the project above and beyond that experienced by the public at large.  KJD filed an appeal in circuit court, objecting to the assessment the City imposed against its property.  The parties submitted written arguments, and after a hearing, the court held that KJD did not rebut the presumption that the City's assessment is valid and did not prove by clear and convincing evidence that the City's findings in support of its assessment were incorrect.  The court therefore entered a judgment denying KJD's objection.  KJD now appeals to this Court, and we affirm.

## Factual and Procedural Background

[¶2.]    The City approved a plan (the Project) to improve and expand its main corridor and connection to Interstate 29.  To complete the Project, the City passed a resolution that would allow it to institute condemnation actions against landowners abutting the Project, and on June 11, 2020, the City commenced a condemnation action against KJD.  This appeal does not concern the condemnation action, which according to KJD, settled in December 2023.

[¶3.]    While the condemnation action was pending, the City passed a resolution of necessity in April 2021, declaring that the City would finance a portion of the Project by levying a special assessment against properties fronting and

-1-

#30439

abutting the Project, including KJD's, that specially benefited from the Project. The resolution listed the following findings in support of the assessment:

- The project will make the property abutting the project a better place in which to conduct business.

- The property will only be assessed the costs for the special benefit of the improvements.

- The adjacent property will receive a special benefit by changing the properties['] highest and best use from rural in character to urban.

- The improvement will provide easier access to the abutting properties.

- The improvements will provide a special benefit to the assessed properties by improving and enhancing the aesthetics and safety, thus enhancing the value, use, and enjoyment of the property.

- The improvements will enhance the market value of the properties abutting the improvement.

- The property abutting the improvements will receive a special benefit above and beyond that benefit enjoyed by the general public.

- That the value of the special benefit equals or exceeds the special assessment.

- Failure to assess property abutting the improvements would result in a windfall to the property owners.

The resolution further provided that the City "considered the character of the improvements, the situation, the surrounding conditions, and whether the substantial benefits to be derived from the improvements are local or general in their nature." It also stated that the City "calculated the portion of the improvements which confers a local special benefit and the general benefit and advantage on the property of the whole community." The resolution further stated

-2-

that the total estimated cost of the Project is $16,000,000, with part financed by special assessments and the City paying the "over size" costs of $14,945,000.

[¶4.]        Thereafter, on October 4, 2021, the City passed a separate resolution approving a special assessment roll detailing the total amount each of the approximately 30 properties abutting or fronting the Project would be assessed.  As it relates to KJD's property, the resolution approved a total assessment of $61,623.38, representing "Water, Sewer, Curb and Gutter, Street Lighting and Sidewalk Assessments."  KJD appealed the assessment to the circuit court.

[¶5.]        In a written brief to the circuit court, KJD noted this Court's statement in *Hubbard v. City of Pierre* that "[a] municipality's power to impose special assessments is limited by the constitutional requirement that the project confer a special benefit on the assessed property."  2010 S.D. 55, ¶ 13, 784 N.W.2d 499, 505. KJD then argued that the City's assessment is unconstitutional because, in its view, the Project did not confer a special benefit on its property.  In support, KJD relied on the information in documents attached to an affidavit of KJD's counsel submitted with its brief.  These include an appraisal report the City obtained for the condemnation action and an appraisal KJD obtained after the special assessment. KJD also relied on the City's admission made in response to KJD's request for admissions that the Project did not benefit KJD's property within the meaning of SDCL 21-35-17, a statute governing condemnation actions.  KJD additionally challenged the City's method of calculating the amount of the assessment based on the cost of the Project rather than by determining "the *value* of the special benefits received by an individual property."  KJD asked the court to declare the assessment

-3-

unconstitutional and enter an order invalidating the assessment against its property or enjoining the City from collecting it.

[¶6.] In the City's responsive brief, it asserted that KJD's property received special benefits from the Project as identified "in both its Resolution of Necessity and its discovery responses in this [challenge]." The City then quoted its answer to KJD's interrogatory asking what special benefit KJD's property would receive:

- The rural county road abutting the Property will be replaced with an urbanized multi-lane municipal roadway. The new roadway will include additional lanes of travel, curb and gutter, sidewalks, access control, a municipal water main and improved drainage conveyance.

- Curb and gutter will make the Property safer by creating a barrier that keeps vehicle traffic within the roadway and off of the Property. Curb and gutter will improve the drainage conveyance. Curb and gutter will enhance the aesthetics of the Property.

- Street lighting and sidewalks will enhance the aesthetics of the Property and make the Property safer for its current and future customers, suppliers and employees.

- Adding lanes of travel to the roadway abutting the Property and access control in the vicinity of the Property via a median and traffic signal will reduce congestion, improve traffic flow and improve safety for current and future customers, suppliers and employees while traveling to and from the Property and while being present on the Property.

- The municipal water main will provide fire protection with the installation of fire hydrants, which will improve safety, as well as, potentially lower casualty insurance rates. The municipal water main will provide access to increased water volumes that are desirable for future development.

- Drainage conveyance will be improved by improved grading of the Property's frontage and addition of improved drainage facilities in proximity to the Property.

The City further claimed that its method of calculating the amount of the assessment was constitutionally permissible. Thus, according to the City, KJD did not rebut the presumption that the City's findings are correct and further failed to establish that the assessment is unconstitutional. The City asked the circuit court to affirm the special assessment against KJD's property.

[¶7.] At the hearing on KJD's appeal, the parties first addressed the proper procedure for the circuit court to rule on the matter. In KJD's view, the court could rule on its objection to the special assessment as a matter of law because "we're here essentially on a motion for summary judgment in the context of the appeal for which there is no clearly established procedure in South Dakota law." KJD further asserted "that the relevant facts are undisputed" that the City's special assessment is unconstitutional. In response, the City noted that KJD did not file a motion for summary judgment. The City then asserted that because there are "factual disputes" and "admissibility of evidence disputes[,]" it did not believe the court could "decide this case[.]" The City also noted KJD's burdens as outlined in *Hubbard* and advised the court that it did not stipulate to the admission of any evidence attached to KJD's counsel's affidavit filed in support of its objection. The City then specifically objected to the appraisals being received into evidence on foundation and relevance grounds and noted that it had objected to some of KJD's interrogatories and none of those objections had yet been addressed by the court.

[¶8.] The circuit court attempted to clarify the nature of KJD's challenge and asked if it was focused on the City's resolution. KJD responded yes, but then noted that in response to its interrogatory asking about the City's methodology in

determining the special benefits to KJD's property, the City had admitted, albeit with an objection, that no special methodology was used to make this determination. KJD acknowledged it could have proceeded by presenting testimony to the court but repeated its view that there are no factual disputes because of the conclusory nature of the City's resolution. The court again asked KJD's counsel if the issue pending before the court "is really about the resolution" and not the condemnation action, and counsel answered, "Absolutely." But counsel then noted that appraisals were done on KJD's property by both parties in connection with the condemnation case in which there was no finding of a special benefit. Thereafter, KJD's counsel explained that his "ultimate response" to the City's "procedural argument" relating to the admissibility of the appraisals "is it still doesn't matter because the City has no evidence of a quantifiable . . . special benefit to the property."

[¶9.]       The circuit court noted that it could conduct a de novo review of the City's action and have a full hearing applying the rules of evidence, but the court then reiterated its understanding that KJD is "just challenging the action of the City of Tea in the resolution that was adopted[.]" KJD's counsel confirmed that "[a]s it applies to this property[,]" the court's understanding was correct.

[¶10.]      The court asked the City for its position on KJD's assertions, and the City took issue with KJD's characterization of its interrogatory response regarding the City's methodology, noting that KJD did not read the full answer detailing the City's methodology. After relating the full answer, the City claimed "there was a methodology[.]" The City then reiterated that there are factual disputes at issue

and claimed de novo review would not be applicable. The City emphasized that there is "a presumption that what the City did was correct[.]" The City further noted that KJD has the burden of rebutting this presumption and that "the only way that you can bring in evidence to rebut a presumption is to have evidence, and . . . there isn't any in the record at this point."

[¶11.] After an additional exchange regarding the parties' disagreement about whether the appraisals from the condemnation proceeding could be considered in the appeal of the special assessment, KJD's counsel acknowledged that KJD could call the appraisers and witnesses from KJD and the City to testify. But counsel then maintained that the matter is "ripe for the court's consideration" because "at the end of the day, it won't change the facts of what the City actually did and whether that is legally sufficient to satisfy the constitution[.]"

[¶12.] After considering counsels' remarks, the circuit court determined that it would be proper to consider "the briefing" the parties had submitted. The court stated that "at least at this juncture the procedural requirements have been met" and also noted that the City's objection had been preserved. The court then invited counsel to present their arguments on the merits. At the conclusion of the hearing, the court issued an oral ruling finding that the City articulated factual determinations supporting the assessment and that the City's response to KJD's interrogatories provided the basis for its calculation of KJD's assessment. The court therefore concluded that KJD did not overcome the presumption that the City's "resolution is valid on its face." The court's written judgment contains a conclusion

that KJD "failed to prove by clear and convincing evidence that the City of Tea's findings in support of its assessment are not correct."

[¶13.]    KJD appeals, asserting the circuit court erred in upholding the City's special assessment levied against its property.

## Analysis and Decision

### I.    The circuit court's appellate procedure and this Court's review.

[¶14.]    KJD filed its objection to the City's special assessment in circuit court pursuant to SDCL 9-43-96. That statute provides:

> The decision of a municipal governing body upon a special assessment roll may be appealed to circuit court. The appeal shall be made within twenty days after publication of a notice that the resolution confirming the special assessment roll has been adopted by filing written notice of the appeal with the municipal finance officer and the clerk of the circuit court in the county in which the real property is situated. The notice of appeal shall describe the property and set forth the objections of the appellant to the special assessment.

*Id.* This statute did not exist at the time *Hubbard* was decided. In *Hubbard*, the property owners commenced a declaratory judgment action against the city and the court decided the matter after a trial.

[¶15.]    After *Hubbard*, the Legislature passed "[a]n Act to revise procedures and requirements relating to special assessments and the financing of local improvements." 2012 S.D. Sess. Laws ch. 57. In doing so, it repealed multiple statutes and enacted new ones, including SDCL 9-43-96, which provides landowners an avenue to challenge a city's special assessment via an appeal. But the

Legislature did not also enact a statute identifying the scope of review by a court considering such a challenge.[1] However, *Hubbard* is instructive on this question.

[¶16.] In *Hubbard*, the city argued that its decision to impose a special assessment is legislative in nature and cannot be overturned unless the decision is arbitrary or made without authority. 2010 S.D. 55, ¶ 17, 784 N.W.2d at 507. The Court, however, noted that "[a] municipality's power to impose special assessments is limited by the constitutional requirement that the project confer a special benefit on the assessed property." *Id.* ¶ 13, 784 N.W.2d at 505. Therefore, the Court explained that if the municipality imposes a special assessment that "violates constitutional principles, the action is by its very nature arbitrary, unreasonable, and beyond [the city's] authority." *Id.* ¶ 17, 784 N.W.2d at 507.

[¶17.] In regard to judicial review of the municipality's decision, the Court recognized the factual nature of the determinations whether an improvement is local and whether it confers special benefits and noted that a city's findings as to such matters are presumed correct. *Id.* ¶¶ 11, 16, 784 N.W.2d at 504, 506. The Court further explained that before a court may disturb these findings, the landowner must rebut the presumption that the municipality's action is correct and

---

1.      It appears the Legislature enacted SDCL 9-43-96 in response to the recognition in *Hubbard v. City of Pierre* that a special assessment could implicate a landowner's constitutional right to not have "property . . . taken for public use without just compensation" or to "be deprived of life, liberty or property without due process of law." 2010 S.D. 55, ¶ 10, 784 N.W.2d 499, 504 (citing U.S. Const. amend V and S.D. Const. art. VI, § 2). A landowner must therefore have an avenue to challenge the constitutionality of a special assessment. *See id.* ¶¶ 10, 13, 784 N.W.2d at 505 (citing *Village of Norwood v. Baker*, 172 U.S. 269, 279, 19 S. Ct. 187, 190−91, 43 L. Ed. 443 (1898) (referring to the right of a property owner to show that a special assessment exceeds the benefits received)).

meet the burden of persuasion by proving with clear and convincing evidence that the special assessment is unconstitutional and thus beyond the city's authority. *Id.* ¶ 16, 784 N.W.2d at 506–07; *see also Winona & St. P.R. Co. v. City of Watertown*, 1 S.D. 46, 44 N.W. 1072, 1073 (1890) (noting that "special assessments are presumed to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied"). In light of the constitutional rights at play and the presumptions that must be overcome by evidence, we conclude that a circuit court may resolve an appeal pursuant to SDCL 9-43-96 via a trial on the merits as was done in *Hubbard*.[2]

[¶18.]        Here, instead of requesting a trial, KJD asked the circuit court to rule on its challenge to the special assessment based on the parties' written submissions and oral argument, akin to what would be done to resolve a motion for summary judgment. But KJD did not file a motion for summary judgment, and the record is devoid of submissions that are required to be filed with such a motion, including a statement of undisputed material facts to which the opposing party has an opportunity to respond. Also, the City did not stipulate to the circuit court's consideration of the documents submitted via affidavit by KJD and argued that because facts were in dispute, the court could not decide the matter at the time of the hearing. Given the absence of a proper summary judgment motion or a stipulation by the parties as to the evidence, it would have been improper for the

---

2.    Although a trial to the court is one method of meeting the evidentiary burdens, this does not foreclose the possibility of submitting the matter to the court under the rules governing motions for summary judgment.

court to rely on the information in the documents attached to KJD's counsel's affidavit.

[¶19.]    However, the circuit court did not, in its oral ruling, refer to the appraisals or any of the responses to interrogatories or requests for admissions to which there was an objection. The court only referred to the City's response to one of KJD's interrogatories, to which there was no objection, in which the City further explained its methodology in calculating the amount of the special assessment. Notably, the City referred to this response both in its briefing and arguments to the circuit court.

[¶20.]    On appeal, the parties dispute the standard of review this Court is to apply to the circuit court's decision. KJD argues that a de novo review applies in all respects because the court did not hear testimony, make credibility determinations, or enter findings of fact. In contrast, the City argues that this Court "must defer to the lower court's factual determination that KJD, LLC failed to 'prove by clear and convincing evidence' that the City of Tea's findings in support of its assessment are not correct[.]" While a deferential review would be appropriate had the court considered live testimony, the court's ruling here was based only on the parties' legal arguments and the uncontested facts contained in their written submissions. Therefore, we review the court's decision de novo.

[¶21.]    The parties also dispute whether and to what extent this Court can consider the documents attached to KJD's counsel's affidavit filed in support of KJD's objection to the City's special assessment. As it pertains to the appraisal reports, KJD has not cited any authority to support its claim that this Court can

consider them. These reports were not submitted to the circuit court in conjunction with a motion for summary judgment or offered as evidence at the hearing on KJD's objection, and the City objected on foundation and relevancy grounds to the court's consideration of them. We therefore decline to consider the appraisal reports when reviewing whether the circuit court erred in concluding that KJD did not meet its burden of proof.

[¶22.] In regard to the City's responses to KJD's requests for admissions, KJD claims we can rely on the admissions under SDCL 15-6-36(b), which provides that admissions made in the pending action may be used against the party. In response, the City asserts that this Court cannot rely on the admissions because the last phrase in SDCL 15-6-36(b) limits the use of an admission to the pending action and the admissions were made in the separate condemnation proceeding. KJD, however, claims that the City's admissions were made *in this case*.

[¶23.] Under SDCL 15-6-36(b),

> *Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.* Subject to the provisions of § 15-6-16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining his action or defense on the merits. *Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding.*

(Emphasis added.)

[¶24.] The City's answer to KJD's request for admissions has the civil file number for the separate condemnation action in its caption. However, the

-12-

document is titled, "*Appellee's* Answers to *Appellant's* Interrogatories, Requests for Admissions, and Requests for Production of Documents (first set)" and the statements contained therein relate primarily to the propriety of the special assessment. (Emphasis added.) Because there was no "appellee" or "appellant" in the condemnation action and that action would not have involved a special assessment, the civil file number on this document is obviously incorrect. It is apparent that KJD served this discovery document on the City in *this* appeal to the circuit court challenging the City's special assessment. Thus, contrary to the City's assertion, the limiting phrase at the end of SDCL 15-6-36(b) does not apply, at least to the extent there are no unresolved objections to such admissions. Moreover, the City did not file a motion with the circuit court to withdraw or amend any admission; thus, they are deemed conclusively established. Therefore, this Court is not precluded from relying on the City's unobjected to admissions.

> ## II. Whether the circuit court erred in upholding the City's special assessment levied against KJD's property.

[¶25.] "The South Dakota Legislature has authorized municipalities to impose special assessments on landowners for local public improvements." *Hubbard*, 2010 S.D. 55, ¶ 12, 784 N.W.2d at 505. However, "[s]pecial assessments can be sustained only upon the theory that the property assessed receive some special benefit from the improvement differing from the benefit that the general public enjoys." *Hawley v. City of Hot Springs*, 276 N.W.2d 704, 705 (S.D. 1979). As the United States Supreme Court explained, "the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special

benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation." *Village of Norwood v. Baker*, 172 U.S. 269, 279, 19 S. Ct. 187, 191, 43 L. Ed. 443 (1898). Therefore, "if a local public improvement confers a special benefit on private property, a special assessment can be constitutionally imposed if the assessment does not exceed the benefit received." *Hubbard*, 2010 S.D. 55, ¶ 10, 784 N.W.2d at 504.

[¶26.]       Here, KJD advances several arguments in support of its view "that the City's special assessment amounts to an unconstitutional taking[.]"  It contends that the Project did not, as a matter of law, confer a special benefit because the City admitted in a request for admission that KJD's property did not receive a benefit for purposes of the condemnation proceeding.  KJD further argues that the special assessment is unconstitutional because the City did not quantify the value of the alleged special benefit to KJD's property.  Finally, KJD contends that to the extent the City's findings are presumed correct, KJD rebutted the presumption and established by clear and convincing evidence that the Project did not specially benefit its property.

> A.     *Whether the project did not, as a matter of law, confer a special benefit on KJD's property.*

[¶27.]       KJD notes that under SDCL 21-35-17, "[i]n all cases of taking or damaging private property by a municipal corporation, the jury shall take into consideration the *benefits* which may accrue to the owner thereof as the result of the proposed improvement."  (Emphasis added.)  It further notes that the Legislature has authorized municipalities to "make assessments for local improvements on

-14-

property adjoining or *benefiting* from the improvements[.]" SDCL 9-43-76 (emphasis added.) KJD then argues that because both statutes refer to a *benefit*; the City's admission in its discovery response that the Project did not benefit KJD's property within the meaning of SDCL 21-35-17 "conclusively establishes that the Project did not benefit" KJD's property for purposes of the special assessment.[3]

[¶28.]     The circuit court did not address this question, nor did it rely on this admission by the City. As noted above, the City had objected to this request for admission, asserting a legal argument that relates directly to the issue KJD now asserts in this appeal, i.e., that a determination whether a special benefit exists in a condemnation proceeding implicates different considerations than when evaluating whether a special benefit exists for special assessment purposes.[4] Nevertheless, the

---

3.     KJD also argues that "the City's failure to pursue the alleged special benefit as a reduction of condemnation damages" under SDCL 21-35-17 "is itself sufficient to establish that there is no special benefit as a matter of law." There is no need to address this separate argument because it is likewise premised on KJD's view that the absence of a special benefit in a condemnation proceeding perforce means there are no special benefits to support a special assessment. Also, the terms of the parties' settlement in the condemnation matter have not been revealed to this Court, either in the parties' briefs or in the appellate record.

4.     The City also claims that the "scope of the project rule" precludes consideration of the appraisal reports and the City's admission that the appraisal did not indicate a special benefit to KJD's property. This rule has no impact on the issues in this appeal. As noted by KJD, the scope of the project rule in a condemnation proceeding "prohibits a landowner from asserting a claim for increased compensation as a result of increasing land values after the taking has been *announced*." *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 60, 709 N.W.2d 824, 840 (emphasis added) (citing *United States v. Reynolds*, 397 U.S. 14, 90 S. Ct. 803, 25 L. Ed. 2d 12 (1970)). The rule's focus on the determination of fair market value *at the time of the taking* is based on the notion that property owners should not "gain by speculating on probable increase in value due to the Government's activities."

(continued . . .)

lack of review by the circuit court or ruling on the City's objection does not impede

our review. The scope of the term *benefit* under SDCL 9-43-76 involves statutory

interpretation and questions of law; therefore, we consider these matters de novo.

*Krsnak v. S.D. Dep't of Env't & Nat. Res.*, 2012 S.D. 89, ¶ 8, 824 N.W.2d 429, 433.

[¶29.]     As it pertains to special benefits in a condemnation proceeding, this

Court explained in *State Highway Commission v. Emry* that "the benefit to the

remaining property *must be different in kind* from that of any other owner involved

in the highway improvement and that, though the benefits to various landowners

affected may differ in degree, *it is not the degree* of benefit that controls."

(Emphasis added.)[5]  90 S.D. 587, 596, 244 N.W.2d 91, 96 (1976).  In contrast, for

---

(. . . continued)

> *Reynolds*, 397 U.S. at 18–19, 90 S. Ct. at 806.  This rule does not preclude a determination that the market value of the surrounding land not taken has an increased market value due to the benefits of the improvement, thus warranting an offset to the compensation due to the landowner. *See United States v. Miller*, 317 U.S. 369, 376, 63 S. Ct. 276, 281, 87 L. Ed. 336 (1943) (noting that "if the taking has in fact benefited the remainder[,] the benefit may be set off against the value of the land taken"); *State Hwy. Comm'n v. Emry*, 90 S.D. 587, 588, 244 N.W.2d 91, 91 (1976) (noting that the parties "stipulated as to the amount of the enhanced value to the remainder which was to be a setoff against the total if that benefit was found . . . to be a special benefit").

5.    After defining special benefit for purposes of a condemnation proceeding, the Court in *Emry* stated that "[t]his holding necessarily follows from our prior holdings defining the term 'special' for the purposes of distinguishing between *general and special damages* recoverable in eminent domain proceedings."  90 S.D. at 596–97, 244 N.W.2d at 96 (emphasis added). However, *Emry's* definition statement that the benefit "must be different in kind from that of any other owner involved in the highway improvement[,]" *id.* 90 S.D. at 596, 244 N.W.2d at 96, may not align with how this Court has defined special damages in our inverse condemnation cases prior and subsequent to *Emry*, namely "that where no part of an owner's land is taken but because of the taking and use of other property so located as to cause

(continued . . .)

-16-

purposes of a special assessment, we have stated that special benefits can be different in kind *or* in degree. *Hubbard*, 2010 S.D. 55, ¶ 14, 784 N.W.2d at 504 (noting that special benefits must be "*above and beyond* or *differing from* the benefit enjoyed by the general public"); *see also Ruel v. Rapid City*, 84 S.D. 79, 85, 167 N.W.2d 541, 544 (1969) (describing a special benefit as a "benefit above and beyond that enjoyed in common with the public at large or the rest of the community"). We have not previously been asked to decide whether the benefits considered in a condemnation action are the same type of benefits considered for purposes of a special assessment.

[¶30.]     In regard to that question, we begin with the starting premise that the nature of the government action in a special assessment is different than what occurs in a condemnation proceeding. As this Court explained, "[s]pecial assessments are understood to refer to money raised or levied for some local municipal purpose to which the funds so collected are to be specifically applied in making the local improvements." *Hubbard*, 2010 S.D. 55, ¶ 12, 784 N.W.2d at 505 (citation omitted). Thus, the government imposes a special assessment against an

_____

(. . . continued)

damage to an owner's land, such damage is compensable if the consequential injury is peculiar to the owner's land and *not of a kind suffered by the public as a whole.*" *State Hwy. Comm'n v. Bloom*, 77 S.D. 452, 461, 93 N.W.2d 572, 577 (1958) (emphasis added); *see also Hurley v. State*, 82 S.D. 156, 165, 143 N.W.2d 722, 727 (1966); *State ex rel. Dep't of Transp. v. Miller*, 2016 S.D. 88, ¶ 39, 889 N.W.2d 141, 153; *State ex rel. Dep't of Transp. v. Legacy Land Co.*, 2023 S.D. 58, ¶ 38, 998 N.W.2d 94, 104. Nevertheless, the manner in which we resolve the issue in this appeal does not require us to determine whether the Court in *Emry* intended to narrow the comparative group when examining whether a special benefit can offset a damage award to a landowner in a condemnation proceeding.

owner of property as a method of allocating the cost of a local improvement to those landowners who will benefit most from the improvement. *Id.*; SDCL 9-43-76 (providing that "[a]ny municipality may make assessments for local improvements on property adjoining or benefiting from the improvements"). In contrast, a condemnation proceeding determines the amount of compensation the government must pay to the owner of property taken for, or damaged by, a public improvement. *See Rupert v. City of Rapid City*, 2013 S.D. 13, ¶ 20, 827 N.W.2d 55, 64 (discussing the measure of damages in a condemnation proceeding).

[¶31.] Because the government actions at issue differ in nature, the determination that a local improvement confers a special benefit for purposes of a special assessment, as compared to a determination that a special benefit impacts the compensation due in a condemnation proceeding, implicates different considerations. As it pertains to condemnation proceedings, the Court in *Emry* explained that "the benefits which may be taken into consideration are not those which may inure to the community in general or to the public in common, but must be those benefits which inure to the owner as to the part of the property not taken proximately resulting from the improvement and *which are of such a nature as to increase the market value of that part of the property not taken*." 90 S.D. at 596, 244 N.W.2d at 95 (emphasis added) (quoting *State Hwy. Comm'n v. Bloom*, 77 S.D. 452, 460, 93 N.W.2d 572, 576–77 (1958)). But in the context of a special assessment, when considering whether a special benefit exists, this Court has not limited the benefit to those that increase the market value of the property not taken or damaged. Rather, for purpose of a special assessment, the Court noted that "[o]ne

obvious indicator that property receives a special benefit is if the public project enhances its market value." *Hubbard*, 2010 S.D. 55, ¶ 15, 784 N.W.2d at 506. However, the Court explained that other indicators include "[f]uture prospects and reasonable expectations of the future use" and "the property realiz[ing] aesthetic enhancement." *Id.*; *see Hawley,* 276 N.W.2d at 706 (concluding that a determination "solely on the basis of the increase in the current market value results in too inflexible a standard by which to judge the special benefits accruing to the affected property"); *see also CED Prop., LLC v. City of Oshkosh*, 909 N.W.2d 136, 150 (Wis. 2018) (noting that a special benefit can include an increase in market value, but such is not required).

[¶32.]     Nevertheless, it is true that some of the indicators of a special benefit that would support a special assessment could also be considered in a condemnation proceeding when determining whether an offset is required from the compensation due for the property taken or damaged because of an increase in the market value of the remaining property as a result of the improvement. For this reason, a determination in a condemnation proceeding that there is no special benefit may be relevant in a challenge to a municipality's decision to levy a special assessment. However, what constitutes a special benefit in a condemnation proceeding is narrower in scope than what constitutes a special benefit for purposes of a special assessment. Therefore, contrary to KJD's view, a determination cannot be made *as a matter of law* that the absence of a special benefit in a condemnation proceeding unequivocally means there is no special benefit supporting a special assessment.

> B.   *Whether the City was required to quantify the value of the alleged special benefit to KJD's property.*

[¶33.]   KJD notes this Court's statement in *Hubbard* that "[t]he constitutionality of a city's act in specially assessing property requires the assessment 'be measured or limited by the special benefits accruing to [the property].'" 2010 S.D. 55, ¶ 17, 784 N.W.2d at 507 (second alteration in original) (citing *Norwood*, 172 U.S. at 294, 19 S. Ct. at 196). In its view, this means the City was required to quantify the alleged special benefit to KJD's property. KJD then notes the lack of quantification in the City's resolution imposing a special assessment and that the City admitted in its answers to KJD's interrogatories (without objection) that it did not obtain any appraisals or other valuation opinions regarding the value of the alleged benefits. KJD also contends that "the City's admission that it calculated the assessment by allocating the *cost* of the Project to abutting properties according to their linear feet[,]" a methodology KJD asserts "this Court definitively rejected" in *Hubbard*, means the City's assessment could not have been measured by the special benefit and is thus unconstitutional.

[¶34.]   KJD does not direct this Court to any authority to support its claim that the constitutional requirement that the assessment be measured or limited by the benefit conferred means a municipality must place a specific monetary value on the special benefit conferred before levying the assessment on the property. The crux of the constitutionality question is whether the assessment is "in excess of the special benefit received." *Id.* In ascertaining whether that is the case, we have "recognized that an 'exact and actual monetary benefit' to property may 'be difficult to measure and at most can only be estimated with a fair degree of exactness.'" *Id.*

¶ 15, 784 N.W.2d at 506 (citation omitted). Notably, although KJD relies on statements from *Hubbard* regarding the determination that the special assessments at issue exceeded the benefit conferred, these statements were made in the context of reviewing *evidence presented at trial* to determine whether the landowners rebutted the presumption that the city's assessment was valid and whether they met their ultimate burden of proof. *See, e.g.*, 2010 S.D. 55, ¶ 27, 784 N.W.2d at 510 (noting that "[t]he circuit court was unable to conclude from the evidence that the replaced curb, gutter, and driveways provided 'actual, physical, material and quantifiable special benefits' to the property assessed").

[¶35.]     As to KJD's reliance on *Hubbard* to criticize the manner in which the City calculated the assessment, while it is true the city in *Hubbard* similarly calculated the amount of the assessment "at a set rate per linear foot of reconstructed curb and gutter and a set rate per square foot of reconstructed driveway approaches," this Court did not declare such method of calculation per se unconstitutional. The United States Supreme Court in *Norwood* also did not hold that such *method* of calculation is unconstitutional per se when it considered an assessment calculated in a similar manner. 172 U.S. at 279, 19 S. Ct. at 190–91. Rather, the focus in *Norwood* was on the inability of a property owner to challenge such an assessment. In that regard, the Court observed:

> It is one thing for the legislature to prescribe it as a general rule that property abutting on a street opened by the public shall be deemed to have been specially benefited by such improvement, and, therefore, should specially contribute to the cost incurred by the public. It is quite a different thing to lay it down as *an absolute rule* that such property, whether it is in fact benefited or not by the opening of the street, may be assessed by the front foot for a fixed sum, representing the whole cost of the

> improvement, *and without any right in the property owner to show, when an assessment of that kind is made, or is about to be made, that the sum so fixed is in excess of the benefits received.*

*Id.* (emphasis added).

[¶36.] Moreover, unlike here wherein the City issued a resolution with findings describing the special benefits and stating that the assessment did not exceed the value of the benefit, the city in *Hubbard* did not issue such a resolution. Instead, at the time the city imposed the assessment in *Hubbard*, it did not believe it was required to show a special benefit under the statute in effect at the time which authorized such assessments based on the number of feet fronting or abutting a project. 2010 S.D. 55, ¶ 9, 784 N.W.2d at 504 (citing SDCL 9-45-30).

[¶37.] After *Hubbard*, the Legislature repealed SDCL 9-45-30 and enacted SDCL 9-43-78, which similarly authorizes the type of calculation the City employed here. Unlike its predecessor, however, this statute, along with the enactment of SDCL 9-43-96, addresses the constitutional issues identified in *Norwood*. In particular, SDCL 9-43-78 allows a city to assess by dividing the cost of the improvement by the amount of feet fronting or abutting a property, so long as this is done after an investigation determining the amount of benefit to the fronting or abutting lots and tracts. Further, SDCL 9-43-96 affords a property owner a right of appeal to the circuit court to challenge whether the assessment exceeds the actual benefit to a particular property.[6]

---

6. SDCL 9-43-79 provides an alternative method of assessing which requires the city to investigate and determine the amount by which each lot is benefited by the improvement.

[¶38.] Importantly, even though the city in *Hubbard* did not make *any finding* that its project specially benefited the abutting landowners, this Court did not conclude, on that basis, that the city's special assessment was unconstitutional. Rather, the Court noted that "special assessments are *presumed* to be made on account of special benefits to the property assessed, conferred by the improvements for which the special tax is levied." 2010 S.D. 55, ¶ 12, 784 N.W.2d at 505 (emphasis added) (quoting *Winona*, 1 S.D. 46, 44 N.W. at 1073). The Court then analyzed whether the evidence introduced at trial rebutted this presumption and whether the evidence ultimately established that the assessment was unconstitutional. *Id.* ¶¶ 20, 21, 784 N.W.2d at 508–09. Here, the fact the City did not quantify the special benefit to KJD's property in its resolution imposing the special assessment and the fact it used the cost of the project in calculating the assessment does not perforce render the assessment unconstitutional.

> C. *Whether the City's findings are entitled to a presumption in favor of the assessment and, if so, whether KJD rebutted that presumption.*

[¶39.] KJD claims the City's findings in its resolution are not entitled to a presumption of correctness because they are "ambiguous and conclusory," and that *Hubbard* stands for the proposition that "'ambiguous and conclusory' assertions" are not entitled to a presumption of correctness. More specifically, KJD argues that because the City admitted it did not investigate KJD's property value pre- and post-Project for the purposes of the special assessment, no presumption attaches to the statement that "[t]he improvements will enhance the market value of the properties abutting the improvement" and the improvement will change "the properties[']

-23-

highest and best use from rural in character to urban." KJD further asserts that the City's additional findings, such as the finding that "[t]he project will make the property abutting the project a better place in which to conduct business," cannot be presumed correct because they "are subjective and inherently ambiguous[.]" As for the findings that the improvement "will provide easier access to the abutting properties" and will improve and enhance "the aesthetics and safety, thus enhancing the value, use, and enjoyment of the property[,]" KJD argues that these "are not benefits specific to KJD's property as distinguished from all other properties affected by the Project."

[¶40.] Contrary to KJD's view, in the context of special assessments, the benefits conferred by the improvement do not need to be unique to KJD's property. The focus of a special assessment is commonly on the benefit to a group of properties—those abutting or fronting or otherwise similarly benefiting from the local improvement. *See* SDCL 9-43-76 (providing that "[a]ny municipality may make assessments for local improvements on property adjoining or benefiting from the improvements"). Further, while a special benefit for purposes of a special assessment could be different in kind and degree than that experienced by other affected landowners, it does not need to be, and often is not. Instead, the special benefit must be "above and beyond" *or* "differing from" that experienced by the public at large. *Hubbard*, 2010 S.D. 55, ¶ 14, 784 N.W.2d at 505.

[¶41.] Also, the phrase "ambiguous and conclusory" from *Hubbard* was not stated in the context of whether a city's findings are entitled to a presumption of correctness. The Court used that phrase when reviewing the circuit court's factual

findings relating to the evidence admitted at trial. In that regard, the Court noted that the city's *evidence* in support of a quantification of benefits "was ambiguous and conclusory in that the City assumed the benefits equaled the cost." *Id.* ¶ 27, 784 N.W.2d at 511. The Court further noted the circuit court's inability to "conclude *from the evidence* that the replaced curb, gutter, and driveways provided 'actual, physical, material and quantifiable special benefits' to the property assessed." *Id.* (emphasis added).

[¶42.]    We also reject KJD's further argument that it overcame the presumption of correctness attached to the City's findings in its resolution that the Project conferred a special benefit on the properties assessed and that "the value of the special benefit equals or exceeds the special assessment[.]" KJD asserts it rebutted the presumption "by *all* valuation evidence in the record." To support this assertion, KJD relies on the opinions in the appraisal reports. But, for the reasons explained above, we are not considering these reports when reviewing whether the circuit court erred.

[¶43.]    KJD nevertheless contends that even without considering the appraisal reports, the City's admission that the Project did not benefit KJD within the meaning of SDCL 21-35-17 rebuts the presumption that its findings are correct. However, KJD's contention assumes this Court accepted its previous argument that the lack of a special benefit in a condemnation proceeding indisputably means the Project did not benefit KJD's property for purposes of a special assessment. For the reasons explained above relating to that argument, KJD's view in this regard is incorrect.

[¶44.] Moreover, as the City argues in response, even if this Court sets aside the findings in the City's resolution that the Project enhances the market value of KJD's property and changes its highest and best use, KJD did not rebut the presumption that the City's remaining findings regarding other special benefits are correct. The City also contends KJD failed to rebut the presumption that the City's special assessment against KJD's property did not exceed the value of the benefit with "weighty evidence" as required by *Hubbard*. *See* 2010 S.D. 55, ¶ 16, 784 N.W.2d at 507.

[¶45.] In *Hubbard*, the Court explained that the presumption that the City's assessment is correct can be overcome by "weighty evidence" that is "strong, direct, clear and positive." *Id.*, 784 N.W.2d at 506–07 (quoting *Hawley,* 276 N.W.2d at 705). "This rule requires that 'substantial, credible evidence be introduced to rebut the presumption.'" *Id.* ¶ 16, 784 N.W.2d at 506 (quoting SDCL 19-11-1). Further, even if the presumption is rebutted, the landowner still has "the ultimate burden of persuasion to prove by clear and convincing evidence that the property did not receive a benefit over and above or differing from the benefit received by the general public." *Id.*, 784 N.W.2d at 507.

[¶46.] Based on our de novo review, we conclude KJD failed to present substantial, credible evidence rebutting the City's finding that it "considered the character of the improvements, the situation, the surrounding conditions, and whether the substantial benefits to be derived from the improvements are local or general in their nature[.]" KJD also failed to present substantial, credible evidence rebutting the City's finding that the value of the special benefit equals or exceeds

-26-

the special assessment against KJD's property. Although KJD focuses on the impact of the Project on the market value and current use of its particular property, "the benefits to the land may not be limited by the present use of the property" and market value is not the only consideration. *See Hawley*, 276 N.W.2d at 706.

[¶47.] For example, the City found in its resolution that the Project will improve and enhance the aesthetics and safety of the property. Although KJD claims such findings are ambiguous and conclusory, the City's answers to interrogatories that KJD asked the circuit court to consider include an explanation that "[t]he new roadway will include additional lanes of travel, curb and gutter, street lighting, sidewalks, access control, a municipal water main and improved drainage conveyance." This answer further noted that the municipal water main would provide fire hydrants which would improve safety. Although, as we noted above, the answers to interrogatories were not properly submitted in conjunction with a summary judgment motion, even if we did consider them for purposes of this appeal, the special benefits identified are of the sort that are fairly characterized as "actual, physical and material and not merely speculative or conjectural." *Ruel*, 84 S.D. at 87, 167 N.W.2d at 545.

[¶48.] It was KJD's burden to show by clear and convincing evidence that the City's findings and determinations were not correct as to its property. Yet instead of presenting contrary testimony and evidence at a trial, it elected to proceed on the City's own avowals in its resolution and the parties' written and oral arguments. Because KJD has not presented substantial, credible evidence to rebut the

presumption of correctness in the City's special assessment, we affirm the circuit court's decision denying KJD's objection to the City's special assessment.

[¶49.]    Affirmed.

[¶50.]    JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.